Heriberto VELAZQUEZ, Plaintiff,

v.

Margaret HECKLER, Secretary of Health and Human Services, Defendant.

No. 83 Civ. 8018 (RWS).

United States District Court, S.D. New York.

Oct. 2, 1984.

The Legal Aid Society, New York City, for plaintiff; Jon C. Dubin, Conrad A. Johnson, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., New York City, for defendant; Donna H. Lieberman, Sp. Asst. U.S. Atty., New York City, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Heriberto Velazquez ("Velazquez"), represented by the Legal Aid Society, brought this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), to review a final determination of the Secretary of Health and Human Services (the "Secretary") which terminated Velazquez' disability insurance benefits. Velazquez has moved for an award of attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(b) and (d)(1)(A). For the following reasons, the motion is granted, and Velazquez is awarded attorney's fees in the amount of $7,820.00.

### Facts and Procedural History

Velazquez is 40 years old and last worked as a copyboy, messenger and stockboy. He has not worked since 1976. In August 1978, the Secretary determined that Velazquez was disabled and entitled to disability insurance benefits due to "schizophrenic reaction, chronic paranoid type." In June 1982, the Secretary reviewed Velazquez' condition and terminated his benefits. Velazquez requested a hearing before an administrative law judge ("ALJ") but waived his right to appear at the hearing. In a decision dated February 28, 1983, the ALJ found that Velazquez' disability had ceased in June 1982. The Appeals Council affirmed the ALJ's decision on August 29, 1983, and on November 2, 1983 Velazquez commenced this action.

In an opinion dated June 19, 1984, the court reversed the Secretary's decision, finding that the Secretary had failed to meet the medical improvement standard set forth in *DeLeon v. Heckler*, 734 F.2d 930

(2d Cir.1984), and ordered the Secretary to resume payment of benefits to Velazquez, including all benefits due since the date of termination. 586 F.Supp. 125.

### Discussion

Velazquez contends that he is entitled to attorney's fees pursuant to 28 U.S.C. § 2412(b), at the market rate of $115 per hour, a total of $7,820.00 for 68 hours, because the Secretary acted in "bad faith, vexatiously, wantonly or for oppressive reasons" in pursuing this litigation, or, in the alternative, that he is entitled to attorney's fees at the rate of $84.20 per hour, a total of $5,725.60, pursuant to 28 U.S.C. § 2412(d)(1)(A), because the Secretary's position was not "substantially justified."

The EAJA, enacted by Congress in 1980 as Title II of Public Law 96–481, 94 Stat. 2325, provides that a prevailing party in any civil action brought against the United States may recover fees "unless the Court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).[1] The statute has been found applicable to judicial review actions brought under the Act. *See, e.g., Deleon v. Heckler, supra,* at 938; *McGill v. Secretary of Health and Human Services,* 712 F.2d 28, 30 (2d Cir.1983); *Guthrie v. Schweiker,* 718 F.2d 104, 107–08 (4th Cir.1983); *Vega v. Schweiker,* 558 F.Supp. 52, 53 (S.D.N.Y.1983); *Watkins v. Harris,* 566 F.Supp. 493, 497–98 (E.D.Pa.1983); *Wolverton v. Schweiker,* 533 F.Supp. 420, 422–23 (D.Idaho 1982). Substantial justification "means that the government must have a solid though not necessarily correct basis in fact and law for the position that it took in this action." *Zimmerman v. Schweiker,* 575 F.Supp. 1436, 1439 (E.D.N.Y.1984).

The Secretary has the burden of proof on establishing that her position was substantially justified and a "strong showing" must be made to meet that burden.

---

**1.** Effective October 1, 1984, subsection (d) of 28 U.S.C. § 2412 is repealed, although the subsection continues to apply through final disposition of any action commenced prior to the date of repeal. Pub.Law 96–481.

*Environmental Defense Fund, Inc. v. Watt,* 722 F.2d 1081, 1085 (2d Cir.1983); *Phillips v. Heckler,* 574 F.Supp. 870, 872 (W.D.N.C.1983); *Ward v. Schweiker,* 562 F.Supp. 1173, 1178 (W.D.Missouri 1983). The test for determining whether the Government's position is substantially justified is essentially one of reasonableness—where the Government can show that its case had a reasonable basis both in law and fact, no award will be made. *See, e.g., Cunningham v. Heckler,* 587 F.Supp. 43, 46 (D.Conn.1984); *Perez v. Heckler,* No. 82–8627, slip op. at 5 (S.D.N.Y. Mar. 1, 1984); *Lonning v. Schweiker,* 568 F.Supp. 1079, 1082 (E.D.Pa.1983). Some courts have required something more than ordinary reasonableness since the Senate Judiciary Committee rejected an amendment which would have changed the language from "substantially justified" to "reasonably justified." *Environmental Defense, supra,* 722 F.2d at 1084 n. 5. *See also Wolverton v. Schweiker, supra,* 533 F.Supp. at 424.

In this case, the Secretary declined requests by Velazquez' counsel to remand to the ALJ the Secretary's determination to terminate Velazquez' benefits, even though there was neither a finding nor evidence of improvement in Velazquez' condition. At the time, the Second Circuit had not ruled, but ten circuit courts and numerous district courts had either explicitly or implicitly adopted a medical improvement standard in termination cases. *See Dotson v. Schweiker,* 719 F.2d 80, 82 (4th Cir.1983); *Kuzmin v. Schweiker,* 714 F.2d 1233 (3d Cir.1983); *Simpson v. Schweiker,* 691 F.2d 966 (11th Cir.1982); *Patti v. Schweiker,* 669 F.2d 582, 587 (9th Cir.1982); *Cassiday v. Schweiker,* 663 F.2d 745 (7th Cir.1981); *Hayes v. Secretary of Health, Education and Welfare,* 656 F.2d 204 (6th Cir.1981); *Weber v. Harris,* 640 F.2d 176 (8th Cir. 1981); *Van Natter v. Secretary of HEW,* No. 79–1439, slip op. at 6–7 (10th Cir. Jan. 8, 1981); *Miranda v. Secretary of Health, Education and Welfare,* 514 F.2d 996 (1st Cir.1975); *Rivas v. Weinberger,* 475 F.2d 255 (5th Cir.1973); *Mersel v. Heckler,* No. 82–6694, slip op. (S.D.N.Y. Jan. 5, 1984);

*Romero v. Heckler,* 586 F.Supp. 840 (S.D. N.Y.1984). In September of 1983, the Supreme Court noted that there is no "circuit conflict on this point at present." *Heckler v. Lopez,* 463 U.S. 1328, 104 S.Ct. 10, 12, 77 L.Ed.2d 1431 (1983). On April 13, 1984, the Secretary admitted confusion over the appropriate standard in termination cases and announced a moratorium on such cases, stating "the only fair thing to do is to stop the process." HHS News Announcement April 13, 1984, p. 3.

■ The Secretary nonetheless contends that her position in this case was substantially justified because the Second Circuit did not adopt a medical improvement standard in termination cases until May 16, 1984 in *DeLeon v. Heckler, supra,* shortly after argument on the motions by Velazquez and the Secretary for judgment on the pleadings. However, the Court in *De-Leon* directed the district court to award attorney's fees under the EAJA, *DeLeon* at 938, thus implicitly finding that the Secretary's position was not substantially justified. In light of the fact that ten circuit courts and numerous district courts had ruled against the Secretary on the medical improvement standard and the Secretary's own decision to announce a moratorium on termination cases, the Secretary's position in this case was not substantially justified. There was no evidence in the record of any improvement in Velazquez' condition prior to termination of his disability benefits and, therefore, at a minimum, an award of attorney's fees under section 2412(d)(1)(A) is appropriate.

■ Velazquez further contends that he is entitled to attorney's fees at the market rate under 28 U.S.C. § 2412(b), which provides:

(b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States act-

ing in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

Section 2412(b) codified and made applicable to the United States the "bad faith" and "common benefit" exceptions to the American common law rule against awarding attorney's fees. *Premachandra v. Mitts,* 727 F.2d 717, 726 (8th Cir.1984). Velazquez contends that the Secretary acted "in bad faith, vexatiously, wantonly or for oppressive reasons," *United States v. Burke,* 548 F.Supp. 724, 730 (N.D.S.D. 1982), in pursuing this litigation because Velazquez was a member of a class of mentally disabled persons who were evaluated under an illegal policy.

On January 11, 1983 the Honorable Jack B. Weinstein, in a state-wide class action, found that thousands of mentally disabled persons were evaluated by the New York State Office of Disability Determinations ("NYSODD") under "a fixed clandestine policy against those with mental illnesses." *City of New York v. Heckler,* 578 F.Supp. 1109, 1115 (E.D.N.Y.1984), *aff'd* 742 F.2d 729, (2d Cir.1984). Under this illegal policy, the Secretary: (1) presumed that mentally impaired claimants whose conditions do not meet or equal the listings retain the capacity for unskilled work; (2) directed pursuant to unpublished internal memoranda the denial of all claims in which a claimant was rated below the listing; (3) pressured NYSODD review physicians to develop medical evidence contrary to their professional beliefs; and (4) did not inform the ALJ who reviewed these cases on appeal that the evidentiary records in these cases were assembled pursuant to this illegal policy. *Id.* at 1124–25. Judge Weinstein concluded that the Secretary's illegal policy affected *all* class members, regardless of the ALJ's determination. *Id.* at 1125. Accordingly, counsel for Velazquez repeatedly requested the Secretary's consent to a remand.

In her motion for judgment on the pleadings in this case, the Secretary did not argue that Velazquez was not a member of the class, which was defined as:

All individuals residing in the State of New York who have applied for or received Title II and/or Title XVI benefits on or after April 1, 1980, and who have been found by defendants to have a mental impairment which is severe (i.e. determined under 20 CFR § 404.1520(c) or § 416.930(c) to require evaluation under Appendix 1 of that Regulation), and whose applications for benefits have been or will be denied or whose benefits have been or will be terminated, on the basis of defendants' determination that such persons are capable of substantial gainful activity.

*City of New York v. Heckler, supra,* 578 F.Supp. at 1114.

Instead, the Secretary argued that individuals with appeals pending in United States courts at the time of the City of New York decision were expressly excluded from class relief because paragraph 2 of the Amended Judgment and Order stated, "U.S. Courts are not bound by this judgment." She also argued that the ALJ did not consider the illegal evidence "salient" to his decision.

Since Velazquez is a member of the class, the Secretary was subject to the collateral estoppel effect of Judge Weinstein's findings of fact and conclusions of law. The ALJ stated that he based his decision on "the overall medical evidence of record and upon the aggregate record," Transcript at 12. As a result, the Secretary was bound by Judge Weinstein's finding that:

[t]he Secretary's illegal policy has affected all class members who have been denied, or terminated from, benefits. As was conceded by defendants' own witness, administrative law judges routinely give great weight to the finding on residual functional capacity which is entered in the record by the state agency's internal review physician. Had the adminis-

trative law judges known that the assessment of residual functional capacity was not based on the doctor's professional opinion, the results in many cases might well have been different.

*Id.*

On March 20, 1984, the Legal Aid Society wrote to the Regional Attorney for the Department of Health and Human Services, expressing surprise at the Secretary's refusal to agree to remands for *City of New York* class members who had cases pending in federal court. The letter stated, "Given the plain application of collateral estoppel doctrine to those cases, we believe that SSA's refusal to agree to remands amounts to bad faith. We therefore plan to vigorously pursue EAJA awards in such cases."

The Secretary's pursuit of this litigation and her refusal to consent to a remand, despite repeated requests by Velazquez' counsel, was unjustifiable. The court finds that the Secretary's refusal to consent to a remand in this case, despite the *City of New York* decision, amounts to bad faith, especially when considered in conjunction with the Secretary's failure to demonstrate any improvement in Velazquez' condition prior to termination of his benefits. Therefore, Velazquez is entitled to recover attorney's fees pursuant to 28 U.S.C. § 2412(b) at the market rate.

Counsel for Velazquez seeks reimbursement at the rate of $115 per hour and has submitted photocopies of contemporaneous time records, as required by *New York Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983), indicating 68 hours of work. Therefore, Velazquez is entitled to recover $7,820.00 in attorney's fees.

For the foregoing reasons, Velazquez' motion for attorney's fees in the amount of $7,820.00 under 28 U.S.C. § 2412(b) is granted. Submit judgment within ten (10) days.

IT IS SO ORDERED.