**Carl L. STONE, Plaintiff,**

**v.**

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 84–3021.**

United States District Court,
S.D. Illinois,
East St. Louis Division.

April 17, 1987.

Douglas Marti, Greenville, Ill., for plaintiff.

Michael C. Carr, Asst. U.S. Atty., Benton, Ill., for defendant.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

The matter before the Court is plaintiff Stone's Application for Attorney's Fees made pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. The only issues raised by the parties are whether plaintiff was a "prevailing" party within the meaning of the Act and whether the position of the government in litigating the case was "substantially justified."

In the case at bar, plaintiff's claim was remanded by the U.S. Magistrate pursuant to Congress' passage of the Social Security Disability Benefits Reform Act of 1984 (the Act) which reestablished the "medical improvement standard" as the sole criteria by which the Secretary could terminate disability benefits.[1] Upon remand, the Secretary, using the "new" criteria, found that plaintiff *had been* wrongfully denied benefits and reinstated them. For this reason it is the government's position that the relief requested by plaintiff was achieved not by the filing of his suit, but rather by a change in the law. Specifically, the government maintains that the Act itself ordered remand of plaintiff's case to the Secretary and that the agency's subsequent reinstatement of benefits was due to their reevaluation of his claim under the "new" standard as opposed to being a result of the instant litigation. For the rea-

sons stated below, this Court does not agree.

## DEFINITION OF "PREVAILING PARTY"

The EAJA provides in part that an award of attorney's fees shall be made to the "prevailing" party unless the Court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A). Congress, however, did not define the term "prevailing party" and a thorough search of Seventh Circuit case law reveals no definition of the term as it is used in the EAJA.

The only judicial interpretation of the term in this Circuit is found with respect to 42 U.S.C. § 1988. For purposes of section 1988, plaintiffs are deemed prevailing parties if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. *Lovell v. City of Kankakee*, 783 F.2d 95, 96 (7th Cir.1986) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). In cases where a settlement is reached, plaintiff's lawsuit must be causally linked to the achievement of the relief obtained. In other words, the suit must have played a provocative role in obtaining the requested relief. *Harrington v. DeVito*, 656 F.2d 264, 266, 267 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982). Accordingly, parties may be considered to have prevailed when they vindicate rights without formally obtaining relief. *Gekas v. Atty. Registration & Disciplinary Com'n.*, 793 F.2d 846, 849 (7th Cir.1986) (quoting *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980)).

---

1. It appears that this was the standard used from the beginning of the Title II program in 1954 until sometime in 1976 when the Secretary "informally" abandoned the standard and unilaterally instituted the "current disability" standard. This change resulted in a majority of the Circuit Courts of Appeal ruling against the Secretary's use of the Agency's own standard in lieu of the one mandated by Congress. The Seventh Circuit, in *Cassiday v. Schweiker*, 663 F.2d 745 (7th Cir.1981), and later in, *Switzer v. Heckler*, 742 F.2d 382 (7th Cir.1984), held, with the majority, that the Secretary must apply the correct Congressional standard, not the one of the Agency's own choosing.

Other circuits have construed the term as used in the EAJA along lines not inconsistent with the Seventh Circuit's construction of it in section 1988 cases. For example, the Third Circuit held, with respect to the term as used in the EAJA, that for a party to "prevail" in disability termination cases, he must not only secure remand of the case, but also a subsequent award of benefits. *Brown v. Secretary of Health and Human Services*, 747 F.2d 878, 884 (3rd Cir.1984). Similarly, in applying the term to a deportation case in which the plaintiff sought attorney's fees under the EAJA, the Tenth Circuit held that a plaintiff prevails for attorney's fees purposes if success on a significant issue of litigation achieves some of the benefit the plaintiff sought in bringing suit. *Kopunec v. Nelson*, 801 F.2d 1226, 1229 (10th Cir.1986). Thus, the Court looks to the *substance* of the litigation to determine whether an applicant has substantially prevailed in its position, and not merely the technical disposition of the case or motion. *Kopunec*, supra, *id.* (quoting *Austin v. Department of Commerce*, 742 F.2d 1417, 1420 (Fed.Cir. 1984). [Emphasis added.]

In a case such as the instant one, where the defendant claims its own remedial action (here its reevaluation of plaintiff's claim for benefits in light of a "new" standard promulgated by Congress) resulted in the reinstatement of benefits, rather than plaintiff's lawsuit, the test is whether plaintiff's lawsuit was a catalyst motivating defendants to provide the primary relief sought in a manner desired by litigation. *Martin v. Heckler*, 773 F.2d 1145, 1149 (11th Cir.1985) (quoting *Robinson v. Kimbrough*, 652 F.2d 458, 465 (5th Cir.1981)).

In a recent case from the First Circuit, the United States District Court for the District of Maine was called upon to decide an application for attorney's fees in a situation factually similar to the instant one. Deciding that the question, essentially, was whether the connection between plaintiff's suit and his recovery of benefits was sufficiently strong to establish the plaintiff as the "prevailing party," the court held that:

In the circumstances of the present case the court is satisfied that the causal connection is a close one. Plaintiff brought the present action in order to challenge the Secretary's denial of benefits on the basis of an alleged misapplication of the "severity" test. Plaintiff's position in that regard was a correct one. Defendant did misapply the severity test. The fortuitous enactment of the Social Security Disability Benefits Reform Act merely afforded the Secretary an alternative basis upon which to determine that plaintiff was entitled to disability benefits. The fact of the matter is that plaintiff would have prevailed on his allegation that the Secretary misapplied the severity test. Therefore, the causal connection between plaintiff's suit and the Secretary's reversal of position, while cosmetically obscured, was very real indeed. Accordingly, plaintiff is a "prevailing party" within the meaning of the EAJA.

*Sherman v. Bowen*, 647 F.Supp. 700 (D.C. Me.1986).

As the Senate committee report on the EAJA stated:

While the influence of the bureaucracy over all aspects of life has increased, the ability of most citizens to contest any unreasonable exercise of authority has decreased.... The bill rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but also refining and formulating public policy.... *An adjudication, for example, may show that the policy or factual foundation underlying an agency rule is erroneous or inaccurate....* The bill thus recognizes that the expense of correcting error on the part of the Government should not rest wholly on the party whose willingness to litigate ... has helped define the limits of Federal authority.

H.R.Rep. No. 96–1418, 96th Cong. 2d Sess. 10, reprinted in (1980) U.S.Code Cong. & Ad.News 4953, 4984, 4988–89. [Emphasis added.] In the context of disability bene-

fits termination cases, the emphasized passage above is particularly cogent.[2]

What had happened was that initially all of the circuits had adopted the "medical improvement" standard, set forth by Congress, which the Secretary refused to apply in termination cases, instead substituting the Agency's own "current disability" standard. This decision by the Agency resulted in thousands of lawsuits being filed against the Secretary for the Agency's failure to comply with the law as enunciated by the Circuit Courts of Appeal. The failure to follow judicial precedent and the resulting avalanche of litigation prompted Congress to take action by enacting the Reform Act of 1984 which, finally, mandated the "medical improvement" standard.[3]

A reading of the legislative purpose of the Act reveals, at a minimum, that the bill was intended to resolve the growing controversy between the courts and the agency precipitated by the latter's refusal to follow the law of the circuits.

## DISCUSSION

Given the facts of this case, the Court cannot find as a matter of law that plaintiff must be deemed as a "prevailing party" by virtue of the fact that he secured a remand and subsequent reinstatement of benefits. This conclusion is necessarily reached because the remand was mandated by the Act itself pursuant to its "sunset" provisions

and the reinstatement of plaintiff's benefits according to the government, was the result of applying the new law. Thus, the issue becomes more complex in that the Court must decide the point based on the "catalyst" test. It is therefore called upon to decide if plaintiff's lawsuit was a "catalyst" motivating the defendant to provide the primary relief sought in a manner desired by the litigation. *Martin*, 773 F.2d at 1149.

Plaintiff initially filed the instant suit seeking judicial review of an administrative law judge's (ALJ) determination that he was not currently disabled and that beginning in September, 1986, he did not have any impairment which significantly limited his ability to perform basic work-related activities for a continuous period of twelve months.

At the hearing before the ALJ, the judge had Dr. Jerome R. Lorenz present as a vocational rehabilitation expert. Additionally, plaintiff produced a clinical psychologist who had previously examined Mr. Stone and found him to be unable to work because of his mental condition. Both men's testimony revealed that plaintiff was, in their opinion, incapable of engaging in any substantial gainful activity due to his neurological disorders. A review of the record reveals that neither of the doctors

---

**2.** This is true because the Secretary, in adopting the "current disability" standard, incurred the judicial ire of a majority of the Circuit Courts of Appeal which had established as legal precedent the use of the "medical improvement" standard in termination cases. As Justice Rehnquist noted in *Heckler v. Lopez*, 463 U.S. 1328, 104 S.Ct. 10, 12, 77 L.Ed.2d 1431 (1983), "... there does not appear to be any significant circuit conflict on this point...."

**3.** H.R.Rep. No. 98–618, 98th Cong., 2d Sess., reprinted in (1984) U.S.Code Cong. & Ad.News 3038, 3039 states:

The overall purpose of the bill is, first, to clarify statutory guidelines for the determination process to insure that no beneficiary loses eligibility for benefits as a result of careless or arbitrary decision-making by the Federal government. Second, the bill is intended to provide a more humane and understandable application and appeal process for disability applicants and beneficiaries appealing termination of their benefits. Finally, the bill seeks to standardize the Social Security Administra-

tion's policy-making procedures through the notice and comment procedures of the Administrative Procedures Act, *and to make those procedures conform with the standard practices of Federal law, through acquiescence in Federal Court of Appeals rulings.*

The committee is deeply concerned about the erosion of public faith and confidence in the social security disability programs, and in the agency as part of the Federal government, that has occurred as a result of the changes in policies over the last several years. The guidelines established in this bill appear to the committee to be the best way to restore confidence in the program. The committee believes it is crucial to continued public support for the social security program as a whole for the public to understand that the program will be administered according to the law rather than by constantly shifting and possibly arbitrary policies.

[Emphasis added.]

that the Agency had examine Mr. Stone were specialists in psychology, psychiatry, or other neurologically related fields. This is of some significance in determining whether or not plaintiff's benefits should have been terminated. Bearing these details in mind, the Court now returns to its analysis of the case applying the "catalyst" test.

The essence of both plaintiff's intra-agency appeals and the case *sub judice* is that the Secretary failed to apply the correct standard of review prior to termination. The Seventh Circuit had ruled in 1981 (prior to the termination of plaintiff's disability benefits) that "... once having found a disability, the Secretary may not terminate the benefits without substantial evidence to justify doing so. This will normally consist of current evidence showing that a claimant has improved to the point of being able to engage in substantial gainful activity...." *Cassiday v. Schweiker*, 663 F.2d 745, 747 (7th Cir.1981). Thus, the Secretary was obliged to apply the law of the Seventh Circuit since it had been clearly enunciated by that court. This the Secretary did not do. Instead, the Secretary apparently relied upon the examinations of two general practitioners in determining that plaintiff no longer had a disability despite plaintiff's treating physician's finding, as well as that of several neurological experts, that Mr. Stone's condition was unchanged and that he could not conduct substantial gainful activity because of a combination of physical and mental disorders. Clearly, under Seventh Circuit law, because there was no substantial evidence of medical improvement, plaintiff would have prevailed as is shown by the Court's later decision in *Switzer v. Heckler*, 742 F.2d 382 (7th Cir.1984). In *Switzer* the court remanded that case to the Secretary, ordering her to reevaluate the plaintiff's claim in light of *Cassiday, supra*. In *Cassiday*, plaintiff's lawsuit clearly motivated the Secretary to provide the primary relief

sought (reinstatement of benefits) in a manner desired by the litigation (reevaluation in light of Seventh Circuit law). The same holds true for *Switzer*, and but for Congress' passage of the Reform Act, this Court would hold that the same holds true in this case. For this reason, the Court must next assess the impact of the Reform Act on the instant case.

■ The government would have this Court believe that plaintiff Stone's suit had no provocative role in prompting Congress' passage of the Reform Act. Nothing could be further inapposite the truth. The plain language of the committee reports and indeed the stated statutory purpose of the bill (cited verbatim in note 3) reflect that Congress passed the bill *as a direct result* of the thousands of suits like plaintiff Stone's which were filed against the Secretary. The bill in fact did not change the prior standard, but merely reaffirmed it and made clear Congress' original intent. Sponsors stressed that its purpose was not to change the status quo or to overturn current case law applying the medical improvement standard, but rather to reaffirm it. *See* 128 Cong.Rec. 513, 861 (daily ed. Dec. 3, 1982) (Statement of Sen. Metzenbaum). It goes without saying then that plaintiff "prevailed" on this point by his litigation. He forced the Secretary, albeit by a circuitous route, to reevaluate his case by the correct standard; one of medical improvement. When this consideration is viewed in light of *Cassiday, supra*, and *Switzer, supra*, the Court concludes that plaintiff is a "prevailing party" as that term is used in the EAJA.[4]

This conclusion is buttressed by the statement of the House Committee in their report on the EAJA that, "... An adjudication ... may show that the policy or factual foundation underlying an agency rule is erroneous...." House Report, *supra, id.* The Secretary's policy of using the "current disability" standard was indeed found by both the circuit courts and Congress to

**4.** The Court expressly notes that determination of whether or not a party is a "prevailing" one for the purposes of disability termination cases where plaintiffs seek attorney's fees under the EAJA is a decision to be made upon the facts of

each case. This opinion should not be construed as holding that all parties who received reevaluation pursuant to the Reform Act should, as a matter of law, be considered "prevailing parties" under the EAJA.

be erroneous. That being the case, when viewed in the context of the stated legislative purpose of the EAJA, namely to recognize that the expense of correcting error on the part of the Government should not rest wholly on the party whose willingness to litigate has helped define the limits of federal authority, the Court necessarily concludes that this plaintiff indeed is entitled to his attorney's fees. Having thus decided that plaintiff is a prevailing party we must next determine whether or not the Agency's position in the litigation was substantially justified or whether special circumstances make an award of attorney's fees unjust. 28 U.S.C. § 2412(d)(1)(A).

The test for determining whether the government's position is substantially justified is "essentially one of reasonableness." *Environmental Defense Fund, Inc. v. Watt*, 722 F.2d 1081, 1085 (2nd Cir.1983) (quoting House Report at 10, reprinted in (1980) U.S.Code Cong. & Ad. News 4989). The government bears the burden of demonstrating the justification for its position, *id.; S & H Riggers & Erectors, Inc. v. OSHRC*, 672 F.2d 426, 430 (5th Cir.1982), and a "strong showing" must be made to meet that burden. House Report at 18, reprinted in (1980) U.S.Code Cong. & Ad.News 4997; *Natural Resources Defense Council v. EPA*, 703 F.2d 700, 712 (3d Cir.1983). The Seventh Circuit has held that in order for the government's position to be "substantially justified," it must have a solid, though not necessarily correct, basis in fact and law for the position that it took in the action. *McDonald v. Schweiker*, 726 F.2d 311, 316 (7th Cir. 1983); *Gotches v. Heckler*, 773 F.2d 108, 111 (7th Cir.1985); *United States v. Kemper Money Market Fund, Inc.*, 781 F.2d 1268, 1275 (7th Cir.1986).

In the case at bar, the government's position was that the Secretary's standard of "current disability" was the correct one and that there was substantial evidence to support a finding that Mr. Stone was no longer disabled. With respect to the proper standard, this contention was in diametric opposition to Seventh Circuit law as enunciated in *Cassiday, supra,* and *Swit-*

*zer, supra.* Furthermore, at least nine other circuit courts and numerous district courts had already ruled against the Secretary on her use of a standard different than the one Congress prescribed. *See Velazquez v. Heckler*, 610 F.Supp. 328, 330 (D.C.N.Y.1984).

Here, the Secretary was clearly aware that the Seventh Circuit required substantial evidence of medical improvement prior to the Agency's termination of an individual's disability benefits because the agency had already lost on this issue in *Cassiday, supra.* Nevertheless, she chose to litigate the case in this Court despite her awareness of the fact that Congress was considering imminent passage of a bill that would vindicate plaintiff's claim.

The bill made clear that Congress was reiterating its prior adoption of the "medical improvement" standard and that it desired the agency to follow the decision of the circuit courts, thus it appears patently unreasonable that the Agency, knowing these things, persisted in defending this suit. Rather than seeking a voluntary remand upon the suit's filing and following applicable Seventh Circuit law, the Secretary filed a transcript of the administrative proceedings and then sought and received a stay pending Congress' passage of the bill. Given the previous adverse ruling against it in *Cassiday,* Congress' stated intent to make Agency policy comport with the case law decided in the various circuits, including our own, and the fact that the Secretary's pleading in opposition to plaintiff's motion for attorney's fees makes no attempt, much less a "strong showing," to substantially justify its position, this Court finds that the Secretary has failed to meet her burden as required by *S & H Riggers, supra.* The Court further notes that it finds the Secretary's refusal to apply Seventh Circuit law as stated in *Cassiday* to the facts of this plaintiff's claim unreasonable as well. Review of these factors makes the conclusion inescapable that the Secretary's position was *not* a solid one. That Congress agrees is documented by their statement that the Reform Act's purpose, in part, was to make those proce-

dures [the termination standards]" ... conform with the standard practices of Federal law, *through acquiesence in Federal Courts of Appeals rulings.* House Report, *supra, id.* [Emphasis added.]

Finally, the Court must decide whether there are special circumstances which would make an award of attorney's fees inappropriate. The Secretary has failed to urge that there are any such circumstances and given the judicial and legislative history of the controversy, the Court is of the opinion that there are none. This is especially true in light of the Secretary's blatant refusal to follow the law of the circuits, thus herself necessitating plaintiff's such as this one seeking relief from an improper Agency policy in the courts. For these reasons, plaintiff's Motion for Attorney's Fees is GRANTED, and it is ORDERED that the Secretary pay plaintiff's attorney the sum of $3,750.00 forthwith as a reasonable sum for the services rendered.

IT IS SO ORDERED.