**Francis J. VITALE, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

No. 83–CV–543.

United States District Court, N.D. New York.

Nov. 23, 1987.

Baker, Clark and Satter, Syracuse, N.Y., for plaintiff; James M. Baker, of counsel.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., for defendant; William F. Larkin, Asst. U.S. Atty., of counsel.

## MEMORANDUM DECISION AND ORDER

McCURN, District Judge.

Pending before the court in the above-captioned case is a motion by plaintiff's attorney, James Baker, for attorney's fees and expenses pursuant to § 2412(d)(1)(A) of the Equal Access to Justice Act ("EAJA").[1] In the alternative, plaintiff's attorney is seeking attorney's fees for representing plaintiff before this court, paid out of plaintiff's past-due benefits pursuant to § 406(b)(1) of the Social Security Act.[2] For the reasons set forth herein, the motion by plaintiff's attorney for attorney's fees and expenses under the EAJA is granted; and consequently, the alternative motion by plaintiff's attorney for fees under the Social Security Act is denied.

On May 6, 1983, plaintiff filed the present action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Secretary of Health and Human Services ("the Secretary") terminating his disability benefits under the Social Security Act. Eventually, the Secretary moved to remand plaintiff's claim pursuant to § 2 of the then recently enacted Social Security Disability Benefits Reform Act of 1984 ("the Reform Act"). Section 2 of the Reform Act set forth a new medical improvement standard to be applied in decisions to terminate disability benefits. *See* 42 U.S.C. § 423(f) (West Supp.1987). Section 2 further required that courts "shall remand" to the Secretary cases such as the present one where plaintiff's action seeking judicial review was pending on September 19, 1984, and where medical improvement was an issue. 42 U.S.C. § 423 *note* (West Supp.1987).

On January 9, 1985, this court granted the Secretary's motion and ordered this action remanded pursuant to the statutory mandate of section 2 of the Reform Act. Upon remand, the Secretary reconsidered plaintiff's claim in accordance with the relevant provisions of the Reform Act and determined that the decision to terminate plaintiff's disability benefits was in error. Plaintiff received $23,289.20 in retroactive benefits for the period of February, 1982 through November, 1984.

---

1. Section 2412(d)(1)(A) provides:
   Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

   28 U.S.C.A. § 2412(d)(1)(A) (West Supp.1987).

2. Section 496(b)(1) provides, in relevant part:
   Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment,....

   42 U.S.C.A. § 406(b)(1) (West 1983).

Plaintiff then moved for an order dismissing the complaint because he was ultimately awarded all the benefits to which he was entitled. On September 22, 1987, the parties stipulated on the record before this court to a dismissal of the complaint. The Secretary further stipulated that he would not be appealing this action on the merits.

## DISCUSSION

The EAJA provides that courts shall award attorney's fees and expenses to the "prevailing party" in litigation against the government. 28 U.S.C. § 2412(d)(1)(A) (West Supp.1987). Attorney's fees will not be awarded, however, if the government's position was "substantially justified" or if "special circumstances" exist making such an award unjust. *Id.*

This motion for EAJA attorney's fees presents three issues for the court's determination. The first issue is whether plaintiff is a "prevailing party" for EAJA purposes. Before addressing the merits of that issue, however, the court must consider a somewhat novel issue raised by the Secretary. Basically, it is the Secretary's position that the plaintiff is not a prevailing party within the meaning of the EAJA because this court did not retain jurisdiction over the present action. The court must therefore determine whether it has jurisdiction to award EAJA fees here. Finally, the court must determine whether the Secretary's position in litigating this action was "substantially justified."

### I. *Jurisdiction*

Turning first to the jurisdiction argument, § 2 of the Reform Act provides, *inter alia:*

> The decision by the Secretary on a case remanded by a court pursuant to this subsection shall be regarded as a *new* decision on the individual's claim for benefits, which supersedes the final decision of the Secretary. The *new* decision shall be subject to further administrative review and to judicial review only in conformity with the time limits, exhaustion requirements, and other provisions of section 205 of the Social Security Act

[section 405 of this title] and regulations issued by the Secretary in conformity with such section.

42 U.S.C.A. § 423 *note* (West Supp.1987) (emphasis added). Relying upon that provision, the Secretary urges that plaintiff is not a prevailing party within the meaning of the EAJA because this court did not retain jurisdiction over the present action when it remanded the case pursuant to § 2 of the Reform Act. The court finds that the Secretary's argument is specious, however, for several reasons.

■ First, although the Secretary couches its argument in terms of jurisdiction, he is actually making an exhaustion argument. That is, when a case is remanded pursuant to § 2 of the Reform Act, at what point during the course of the subsequent administrative and judicial proceedings are plaintiffs' attorneys entitled to seek EAJA fees? Although not expressly stated by the Secretary, he seems to be suggesting that because his decision on remand is a new decision under the Reform Act language, plaintiff must exhaust his administrative and judicial remedies before his attorney may request EAJA fees. The obvious response here is that the plaintiff has adequately exhausted his administrative remedies with respect to the new decision. On remand plaintiff prevailed on the merits of his claim and the Secretary expressly agreed that he would not appeal the merits of that decision. Therefore, because plaintiff was successful on remand and because the Secretary will not be appealing that award, plaintiff has exhausted his administrative remedies, and there is no need for any further judicial review. Plaintiff's action is thus in the appropriate posture for the present motion for EAJA attorney's fees. By agreeing not to appeal the merits of the new decision favorable to plaintiff, the Secretary effectively waived any argument it might have had that plaintiff's attorney is premature in seeking EAJA attorney's fees at this juncture.

■ An additional reason for not accepting the Secretary's assertion that the "new decision" language of the Reform Act deprived this court of jurisdiction is that that

1174

assertion is inconsistent with the general rules pertaining to remand orders. District court orders remanding cases to the Secretary for further administrative review are considered to be interlocutory orders. *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir.1981) (citations omitted). Therefore, it follows that because remand orders are interlocutory, the district court retains jurisdiction over the case until the remand proceedings have been completed. *Taylor v. Heckler*, 778 F.2d 674, 677 n. 2 (11th Cir.1985). In addition, with respect to the powers of remanding courts, the *Zambrana* Court stated:

The remanding court is vested with equity powers and, ..., it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action.

*Id. citing Ford Motor Co. v. NLRB*, 305 U.S. 364, 373, 59 S.Ct. 301, 307, 83 L.Ed. 221 (1939). Finally, it has been recognized that absent a clear statement by Congress to the contrary, "legislation should not ordinarily be interpreted to oust a federal court's equitable power, or its jurisdiction over a pending case." *Avery v. Secretary of Health and Human Services*, 762 F.2d 158, 163 (1st Cir.1985), citing *Califano v. Yamasaki*, 442 U.S. 682, 705–06, 99 S.Ct. 2545, 2559–2560, 61 L.Ed.2d 176 (1979). *See also, Schisler v. Heckler*, 787 F.2d 76, 82 (2d Cir.1986) (District court retained jurisdiction over class action remanded pursuant to the Reform Act, and it was within the court's equitable powers to impose substantive requirements to be followed by the Secretary upon remand.)

In light of the foregoing principles, clearly the "new decision" language of the Reform Act did not deprive this court of jurisdiction. The Reform Act conclusively states that the court shall "remand" cases such as the present one. 42 U.S.C.A. § 423 *note* (West Supp.1987). The Reform Act did not require this court to dismiss the present action. Therefore, this court retained jurisdiction over the present action until the completion of that remanded proceeding.

Moreover, there is absolutely nothing in the Reform Act or the legislative history thereto, *see* 1984 U.S.Code Cong. & Admin. News 3038–3104, indicating that Congress intended to deprive district courts of jurisdiction simply because the decision on remand is deemed to be a "new" one. Thus, clearly there is no basis for interpreting that new decision language to mean that this court is somehow deprived of its jurisdiction to award EAJA fees here. Lastly, given the procedural posture of this case (the Secretary rendered a decision on the merits which is not going to be appealed by either party), it is appropriate for this court to exercise its equitable powers, which it has by virtue of its status as a remanding court, and consider the motion by plaintiff's attorney for EAJA fees.

In addition to the reasons set forth above for refusing to interpret the Reform Act as depriving this court of jurisdiction, there are several practical matters which cannot be ignored. In particular, if the Reform Act is interpreted to oust this court of jurisdiction over the present case for EAJA purposes, that would mean this court also lacks jurisdiction to dismiss the action, which from a procedural standpoint would be an absurd result. Then the court would never be able to clear its docket of the many cases which were remanded pursuant to § 2 of the Reform Act; such cases would remain in limbo.

Furthermore, if this court lacks jurisdiction to award EAJA attorney's fees, it would also lack jurisdiction to award attorney's fees under 42 U.S.C. § 406(b)(1), which plaintiff is seeking in the alternative. Section 406(b)(1) provides that when a court "renders a judgment favorable to a claimant" in a social security disability case, as part of that judgment, the court may also award attorney's fees not in excess of 25% of the total past-due benefits awarded to the claimant as a result of that judgment. Obviously, if the court lacked jurisdiction to make an award of EAJA fees, it would also lack jurisdiction to render a judgment favorable to plaintiff under § 406(b)(1), and thus the court could not award attorney's fees thereunder. The Secretary did not oppose plaintiff's alternative motion, and

therefore presumably, the Secretary believes this court would have jurisdiction to award fees under § 406(b)(1).

## II. *"Prevailing Party"*

The Secretary is also urging that plaintiff is not a prevailing party for EAJA purposes because this case was remanded pursuant to the Reform Act, rather than being remanded pursuant to a court order after a consideration of the merits. Plaintiff counters that he is a prevailing party, and that it is irrelevant that the remand was pursuant to a statutory mandate rather than pursuant to a court order, at least where it is clear the court would have reached the same result. The issue of whether a party has prevailed for EAJA purposes cannot be resolved, however, simply by examining the nature of the remand.

Section 2412(d)(1)(A) of the EAJA provides that a prevailing party is entitled to recover attorney's fees and expenses in litigation against the government. The basic purpose of the EAJA was to insure that individuals would not be deterred from challenging unreasonable government conduct by the high cost of litigating against the government. H.R.Rep. No. 418, 96th Cong., 2d Sess., *reprinted in* 1980 U.S. Code Cong. & Admin.News 4953, 4984, 4988. The term prevailing party is not defined in the EAJA, and, a search of Second Circuit case law fails to reveal any decision defining prevailing party for EAJA purposes. The legislative history of the EAJA makes clear, however, that the prevailing party requirement should be liberally construed, consistent with the law that has developed under other fee-shifting statutes. Hse.Rpt. at 11, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4990.

Given that legislative intent and the lack of relevant Second Circuit authority, the court must consider how the Second Circuit has construed prevailing party in the context of other fee-shifting statutes. In *Gerena–Valentin v. Koch*, 739 F.2d 755 (2d Cir.1984), the Court adopted the catalyst test for determining whether an award of attorney's fees was appropriate under the Voting Rights Act, 42 U.S.C.

§ 1973*l* (e), another fee-shifting statute. Specifically, the Court held that to be entitled to attorney's fees under the Act, "[T]he prevailing party must show a casual connection between the relief obtained and the litigation in which fees are sought." *Id.* at 758 (citations omitted). The Court explained:

> A causal connection exists if the plaintiff's lawsuit was "a catalytic, necessary or substantial factor in attaining the relief."

*Id.* at 758–59 (*quoting commissioners court of Medina County, Texas v. United States*, 683 F.2d 435, 440 (D.C.Cir.1982)). In *Gerena–Valentin*, the Court found that plaintiff's action was not a substantial or catalytic factor behind the favorable results eventually achieved because that action was simply "duplicative" and contributed "virtually nothing to the ultimate result." *Id.* at 759. In so holding, the Court noted that "[t]he inquiry into causality is largely factual." *Id.* (citation omitted).

In *Campaign For a Progressive Bronx v. Black*, 631 F.Supp. 975 (S.D.N.Y.1986), a case involving an application for attorney's fees and expenses under the Voting Rights Act, the court further explained the type of inquiry courts should make in determining whether a party has prevailed. Specifically, the court stated:

> The inquiry as to whether a party has prevailed is "an intensely factual and pragmatic one" because "clues to the provocative effects of plaintiffs' legal efforts are often best gleaned from the chronology of events: defendants, on the whole are usually reluctant to concede that the litigation prompted them to mend their ways."

*Id.* at 980 (*quoting Posada v. Lamb County, Texas*, 716 F.2d 1066, 1072 (5th Cir. 1983)).

In the more recent case of *Rose v. Heintz*, 806 F.2d 389 (2d Cir.1986), after applying the catalyst test and making the requisite factual inquiry, the Court held that plaintiffs were a prevailing party within the meaning of 42 U.S.C. § 1988. Section 1988 authorizes courts to award attorney's fees to prevailing parties in civil

rights litigation. In *Rose,* the plaintiffs were step-children who were challenging their eligibility for medical assistance under the Medicaid program. After plaintiffs commenced their action in *Rose,* the Connecticut Department of Income Maintenance retroactively corrected its initial determination that plaintiffs were ineligible for certain Medicaid assistance. Thus, the Court concluded that plaintiffs' lawsuit was clearly 'a catalytic, necessary, or substantial factor in attaining the relief.' *Id.* at 391 (citation omitted).

The Second Circuit has not yet had occasion to apply the catalyst test in the context of a request for attorney's fees under the EAJA. As plaintiff correctly noted, however, several other courts have applied the catalyst test in that context, and the court finds those cases to be instructive here.

For example, in *Stone v. Heckler,* 658 F.Supp. 670 (S.D.Ill.1987), a case nearly identical to the present one, the court found that plaintiff's lawsuit was a catalytic factor in attaining the relief sought by the litigation. Therefore, the court reasoned that plaintiff was a prevailing party within the meaning of the EAJA because Congress passed the Reform Act "as a direct result of the thousands of suits like plaintiff Stone's which were filed against the Secretary." *Id.* at 674. The court explained that there was an "avalanche of litigation" which prompted Congress to enact the Reform Act. *Id.* at 673. As the committee reports and the stated purpose of the Reform Act make clear,[3] that litiga-

tion grew out of the fact that although Congress had previously stated that the medical improvement standard applied to disability benefit termination cases, and the circuit courts followed that standard, the Secretary refused to do so. *Id.* Instead, the Secretary substituted the Social Security Administration's own "current disability" standard. *Id.* Thus, the *Stone* court concluded:

> The Secretary's policy of using the "current disability" standard was indeed found by both the circuit courts and Congress to be erroneous. That being the case, when viewed in the context of the stated legislative purpose of the EAJA, namely to recognize that the expense of correcting error on the part of the Government should not rest wholly on the party whose willingness to litigate has helped define the limits of federal authority, the Court necessarily concludes that this plaintiff indeed is entitled to his attorney's fees.

*Id.* at 674–75.

Likewise, in *Hyatt v. Heckler,* 807 F.2d 376 (4th Cir.1986), the court rejected the Secretary's argument that the class of terminated claimants obtained relief by Congressional enactment and not as a result of their lawsuit. The court determined that it was only through plaintiffs' class action that they were able to receive the benefits of the Reform Act. *Id.* at 382. Thus, the court held that those plaintiffs were prevailing parties for EAJA purposes.

---

**3.** The stated statutory purpose of the Reform Act was:

> [F]irst, to clarify statutory guidelines for the determination process to insure that no beneficiary loses eligibility for benefits as a result of careless or arbitrary decision-making by the Federal government. *Second, the bill is intended to provide a more humane and understandable application and appeal process for disability applicants and beneficiaries appealing termination of their benefits.* Finally, the bill seeks to standardize the Social Security Administration's policy-making procedures through the notice and comment procedures of the Administrative Procedures Act, and *to make those procedures conform with the standard practices of Federal law, through acquiescence in Federal Court of Appeals rulings.*

> The committee is deeply concerned about the erosion of public faith and confidence in the social security disability programs, and in the agency as part of the Federal government, that has occurred as a result of the changes in policies over the last several years. The guidelines established in this bill appear to the committee to be the best way to restore confidence in the program. The committee believes it is crucial to continued public support for the social security program as a whole for the public to understand that the program will be administered according to the law rather than by constantly shifting and possibly arbitrary policies.

H.R.Rep. No. 98–618, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin.News 3038, 3039. (emphasis added).

In *Sherman v. Bowen*, 647 F.Supp. 700 (D.Me.1986), the court found that even though the "causal connection" between the commencement of plaintiff's action and his ultimate recovery of benefits was a "close one," plaintiff was a prevailing party under the EAJA. *Id.* at 702–03. The district court in *Sherman* emphasized that in applying the catalyst test in EAJA cases, courts should consider *"whether or not ... [plaintiff's] right to benefits had anything to do with the litigating position taken in [plaintiff's] suit. Id.* at 702 (emphasis in original).

Plaintiff Sherman commenced his action to challenge the Secretary's denial of benefits based upon an alleged misapplication of the "severity" test. *Id.* at 703. Concluding that plaintiff would have prevailed on that allegation, the court held:

> [T]he causal connection between plaintiff's suit and the Secretary's reversal of position, while cosmetically obscured, was very real indeed.

*Id.* Thus, the court held that plaintiff was a prevailing party within the meaning of the EAJA.

Finally, in *Hall v. Bowen*, 672 F.Supp. 667 (E.D.N.Y.1987), although the court did not find that plaintiff's lawsuit was a catalyst in the passage of the Reform Act; nevertheless, it held that plaintiff was a prevailing party for EAJA purposes. The *Hall* court reasoned that plaintiff's lawsuit was a "necessary and important factor in bringing about the award." *Id.* at 670. The court thus concluded there was a "casual connection" between the filing of plaintiff's lawsuit and his eventual reinstatement of benefits. *Id.* In *Hall,* as in the present case, plaintiff's action was remanded to the Secretary pursuant to § 2 of the Reform Act. Therefore, the court was also persuaded by the fact that the express language of the Reform Act required the filing of plaintiff's lawsuit before he would be entitled to a remand, and thus to any award. *Id.*

The court is mindful that other courts have rejected the "catalytic" approach in cases involving EAJA attorney's fees. In *Krause v. Secretary of Department of Health and Human Services,* 84 C 3322, slip op. (N.D.Ill. January 9, 1987), the court held that plaintiff was not a prevailing party under § 2412(d)(1)(A) of the EAJA because it was the enactment of the Reform Act, rather than the filing of plaintiff's lawsuit, which ultimately led to the reinstatement of plaintiff's benefits. Relying upon similar reasoning, two other courts have also reached the same conclusion. *See, Welsh v. Secretary of Health and Human Services,* —— F.Supp. ——, CIV-83–1410C, slip op. (W.D.N.Y. May 14, 1987); *Mathus v. Heckler,* 661 F.Supp. 241 (N.D.Ill.1987).

■ This court declines to follow that reasoning, however. The court is persuaded, as was the court in *Stone,* that in light of the stated purpose of the Reform Act as set forth in footnote 3, and the committee reports thereto, the Reform Act was enacted in direct response to lawsuits such as the present one commenced against the Secretary. Therefore, the court concludes that plaintiff Vitale's lawsuit was a catalytic factor in attaining the relief which he sought. It is entirely possible that without lawsuits such as plaintiff's, Congress never would have been persuaded to enact the Reform Act, and thus plaintiff, as well as many others, may not have had their disability benefits reinstated. Further, a finding that plaintiff Vitale is a prevailing party under the EAJA is entirely consistent with the purpose of the EAJA, which is to encourage individuals to challenge unreasonable government conduct.

Moreover, as in *Sherman,* plaintiff's right to benefits here was directly related to his position taken during the course of litigation. Plaintiff initially commenced this action challenging the Secretary's decision to terminate his benefits based, in part, upon the Secretary's failure to apply the medical improvement standard in making that decision to terminate. As discussed more fully in section III, plaintiff's position on that point was meritorious. Therefore, as the *Sherman* court aptly explained:

> The fortuitous enactment of the Social Security Disability Benefits Reform Act

merely afforded the Secretary an alternative basis upon which to determine that plaintiff was entitled to disability benefits.

*Sherman v. Bowen,* 647 F.Supp. at 703. Consequently, had this court reached the merits, which it did not because of the fortuitous enactment of the Reform Act, it would have found that the Secretary failed to apply the proper legal standard, and thus plaintiff would have prevailed in any event. Therefore, clearly a "causal connection" existed between the Secretary's reversal of his prior determination and plaintiff's subsequent award of benefits. Accordingly, the court finds that plaintiff is a prevailing party for purposes of the EAJA.

### III. *Substantial Justification*

■ Having determined that plaintiff is a prevailing party under the EAJA, the court must now consider whether the Secretary's "position" was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). "Position" is defined in the statute as meaning both the position taken in civil litigation and the action taken by the Secretary upon which the civil litigation was based. 28 U.S.C. § 2412(d)(2)(D). "Substantial justification" is not defined in the statute. In *Kirkland v. Railroad Retirement Board,* 706 F.2d 99 (2d Cir.1983), a case relied upon by the Secretary, the Court held that the defendant sustained its burden of showing that its position was substantially justified where, although that position was erroneous, it "was not so devoid of legal or factual support that a fee award is appropriate." *Id.* at 105. Stated somewhat differently, substantial justification "means that the government must have a solid though not necessarily correct basis in fact and law for the position that it took in this action." *Zimmerman v. Schweiker,* 575 F.Supp. 1436, 1439 (E.D.N.Y.1983). Basically, the issue of substantial justification turns upon whether the government's position was reasonable. *Environmental Defense Fund, Inc. v. Watt,* 722 F.2d 1081, 1085 (2d Cir. 1983) (citation omitted). The government has the burden of proof on the substantial justification issue and a "strong showing" must be made to meet that burden. *Id.* (citations omitted).

■ Plaintiff is claiming that the Secretary's position was not substantially justified based upon the Secretary's failure to apply the medical improvement standard and because the Secretary's decision was not supported by substantial evidence. In asserting that his position was substantially justified, the Secretary addressed only the medical improvement standard issue, and thus apparently is conceding that the Secretary's position was *not* supported by substantial evidence in the record. Before addressing the medical improvement standard issue, however, it is necessary to examine the factual background of this action.

This case began in 1974 when plaintiff filed an application for disability insurance benefits. (TR. 38–41). Eventually on May 12, 1975, the Administrative Law Judge ("ALJ") found that plaintiff was disabled due to true psychogenic pain disorder, and thus the ALJ awarded plaintiff disability benefits beginning retroactively on March 1, 1973. (TR. 132–39, 140–41). Plaintiff continued to receive those benefits for approximately seven and one-half years until the Social Security Administration determined that plaintiff's disability had ceased. Following a *de novo* hearing on October 25, 1982, the ALJ found that plaintiff was no longer under a disability. (TR. 10–17). On March 31, 1983, the Appeals Council approved that decision, making it a final decision of the Secretary. (TR. 3).

Pursuant to 42 U.S.C. § 405(g), plaintiff then commenced this action seeking judicial review of the Secretary's final decision terminating plaintiff's benefits. In his answer, the Secretary requested that the Secretary's decision be affirmed. The Secretary also sought affirmance of that 1982 decision on its cross-motion for judgment on the pleadings. Defendant's Memorandum of Law (4/12/84). Thus, in both the civil action and in the underlying agency action, the Secretary's position was that plaintiff's disability at the time his benefits were terminated was no longer of sufficient severity to prevent him from engag-

ing in substantial gainful employment. The court must therefore determine whether that position taken by the Secretary was substantially justified. For the reasons discussed herein, the court finds that the Secretary's position was not substantially justified.

The Secretary maintains that the plaintiff's benefits were properly terminated based "on the then-applicable 'continuing disability' standard." Defendant's Memorandum of Law at 8. To the contrary, plaintiff contends that plaintiff's benefits only could have been terminated based upon the medical improvement standard. Application of the medical improvement standard simply means that the Secretary may terminate the benefits of an individual previously adjudged to be disabled "only upon substantial evidence that the individual's condition has improved to the point that he or she is no longer disabled, or that the initial finding of disability was erroneous." *De Leon v. Secretary of Health and Human Services,* 734 F.2d 930, 936 (2d Cir.1984).

As the court persuasively stated in *Velazquez v. Heckler,* 610 F.Supp. 328 (S.D.N.Y.1984), in 1983, when the plaintiff's benefits were terminated therein, although the Second Circuit had not yet ruled, no less than ten circuit courts and numerous district courts had adopted the medical improvement standard in termination cases. *Id.* at 330 and citations therein. The state of the law was the same on April 13, 1984, when the Secretary here filed its Memorandum of Law seeking affirmance of the Secretary's decision.

Further, although the Second Circuit had not rejected outright the Secretary's position as of April, 1984, it did so less than three months later in *De Leon v. Secretary of Health and Human Services,* 734 F.2d 930, 936–37 (2d Cir.1984). In rejecting the current disability standard, the *De Leon* Court reasoned that not only was the Secretary's position unauthorized by the Social Security statute, it was inconsistent with the Secretary's own regulations. *Id.* at 936. By adopting the medical improvement standard, the Court wanted to insure that claimants' benefits would not be terminated 'simply on the whim of a changed ALJ.' *Id.* at 937 (citation omitted). Perhaps of more significance for purposes of this motion, however, is that in *De Leon* the Second Circuit directed the district court to award EAJA fees, thus implicitly finding that the Secretary's position was not substantially justified. *Velazquez v. Heckler,* 610 F.Supp. at 330.

Based on the foregoing, it is inconceivable to this court how the Secretary can assert that its position was substantially justified. As the court in *Stone v. Heckler,* 658 F.Supp. 670 (S.D.Ill.1987), soundly reasoned:

> The bill [the Reform Act] made clear that *Congress was reiterating its prior adoption of the "medical improvement" standard* and that it desired the agency to follow the decision of the circuit courts, thus it appears patently unreasonable that the Agency, knowing of these things, persisted in defending this suit.

*Id.* at 675 (emphasis added). Given the state of the case law on the medical improvement issue and the express intent of Congress to make the Social Security Administration's policy comport with that case law and prior Congressional intent, the court finds that the Secretary failed to make the requisite "strong showing" that its position was "solid" and thus substantially justified either in reaching the original decision to terminate or in defending that decision on appeal.

Accordingly, the motion by plaintiff's attorney for fees under § 2412(d)(1)(A) of the EAJA is granted and the Secretary is directed to pay plaintiff's attorney the sum of $5,438.40 forthwith as a reasonable sum for the services rendered.

IT IS SO ORDERED.