**Edilia GARCIA Plaintiff,**

v.

**Louis SULLIVAN, Secretary of Health and Human Services, Defendant.**

**No. 89 CV 5517 (KMW).**

United States District Court, S.D. New York.

Dec. 9, 1991.

David Stroh Buckel, Harlem Legal Services, Inc., New York City, for plaintiff.

Lorraine S. Novinski, Special Asst. U.S. Atty., Otto G. Obermaier, U.S. Atty., New York City, for defendant.

## OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Plaintiff moves for an award of attorney's fees from the government pursuant to the Equal Access to Justice Act ("the EAJA"), 28 U.S.C. § 2412. Because the court finds that plaintiff was the prevailing party within the meaning of the statute, and that the government has not met its burden of establishing that its position was substantially justified, plaintiff's motion is granted.

### Background

Plaintiff applied for disability benefits from defendant in November 1986. In December 1987, a Department of Health and Human Services Administrative Law Judge (ALJ) denied her application. Plaintiff requested review of her case by the Department of Health and Human Services Appeals Council; in March, the Appeals Council remanded the case back to the ALJ. The ALJ issued a second opinion denying benefits to plaintiff in September 1988. On February 2, 1989, the Appeals Council again overturned the ALJ's decision and remanded the case. After a hearing, on July 24, 1989, the ALJ again denied plaintiff's request for benefits, this time for a reason inconsistent with his previous two decisions. Plaintiff again appealed the decision.

On August 16, 1989, while her request for review by the Appeals Council was pending, plaintiff filed an action in this court, seeking interim benefits and an order enjoining the ALJ from further participation in her case. On October 2, 1989 the Appeals Council granted plaintiff's request for benefits on the basis of her disability. Three days later the parties stipulated to a dismissal of the action.

## Discussion

Plaintiff seeks attorney fees under two provisions of the EAJA, §§ 2412(b) and (d). The two sections apply somewhat different standards, and employ different methods of computing the amount of any fee award.

### I. Fees Under Section 2412(d)

Section 2412(d)(1)(A) provides that:

[A] court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

#### A. *Prevailing Party*

The first requirement of this section is that the party seeking the fee award be the "prevailing party." Courts have recognized two ways that litigants can achieve prevailing party status within the meaning of the EAJA. The first, and most common, path to prevailing party status requires a party to succeed on a significant issue in litigation which achieves some of the benefit sought in bringing suit. *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). The second path involves what courts have termed the "catalyst test." *Guglietti v. Secretary of Health and Human Services*, 900 F.2d 397, 401 (1st Cir.1990). Under this test, a plaintiff may recover attorney's fees under the EAJA "if the plaintiff's lawsuit was a catalytic, necessary or substantial factor in attaining the relief." *Vitale v. Secretary of Health and Human Services*, 673 F.Supp. 1171, 1175 (N.D.N.Y.1987) (quoting *Gerena–Valentin v. Koch*, 739 F.2d 755, 758–59 (2d Cir.1984)). Applying these tests to the facts of this case, the court finds that plaintiff is a prevailing party under both.

### 1. Merits Test

Defendant argues that plaintiff was not a prevailing party within the meaning of the statute because plaintiff's motion for interim relief was never granted, and "although plaintiff ultimately received disability benefits, it can not seriously be contended that she prevailed on her claim." Def. Mem. in Opp. at 6. Defendant's argument rests on the fact that the action plaintiff commenced in this court was not an action based on a final decision by the Secretary, but rather was an interlocutory action seeking relief pending defendant's final decision. As the Second Circuit has recently held, however, "there is nothing in the EAJA that requires that a party prevail in a civil action reviewing a final agency determination. There being no such requirement, this cannot be the basis for finding that [plaintiff] was not a prevailing party." *Green v. Bowen*, 877 F.2d 204, 206 (2d Cir.1989). While *Green* involved a mandamus action in which the plaintiff sought to compel the Secretary to reopen his claim after an adverse ruling and not a motion for interim benefits, the distinction between *Green* and this case is not dispositive. In both cases plaintiff filed an action that did not seek review of a final agency determination, and in both cases plaintiff ultimately received disability benefits. "Regardless of the wording of the complaint or the actual relief sought in the district court, generally speaking, a social security claimant prevails when it is determined that [s]he is entitled to benefits." *McGill v. Secretary of Health and Human Services*, 712 F.2d 28, 31–32 (2d Cir.1983), cert. denied, 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984). It is true that plaintiff in this case sought interim benefits, but plaintiff also sought to have ALJ Jacobs, whom she viewed as responsible for the excessive delay in her case, removed from the case, in the hope that his removal would speed the resolution of her claim. In other words, plaintiff's efforts to obtain disability benefits and her efforts to obtain interim benefits through this underlying action pending the determination of her disability were not completely separate. When the Appeals Council awarded plain-

tiff disability benefits, its ruling had the effect of granting her the speedier relief she sought. Accordingly, the court finds that plaintiff has succeeded on a significant issue of litigation which achieved some of the benefits she sought in bringing suit, *Texas State Teachers Ass'n*, 109 S.Ct. at 1493, and that therefore plaintiff is a prevailing party within the meaning of the EAJA.

### 2. Catalyst Test

■ The catalyst test, which confers prevailing party status on plaintiffs even if they have not obtained the formal judicial relief sought, has its origins in the clear instructions of the legislative history of the EAJA that courts should construe the prevailing party requirement liberally, consistent with the law that has developed under other fee-shifting statutes. *Vitale*, 673 F.Supp. at 1174–75; *Correa v. Heckler*, 587 F.Supp. 1216, 1220–21 (S.D.N.Y.1984). The Second Circuit has never applied this test to a fee request under the EAJA, although numerous district courts within this Circuit have done so. *See Vitale*, 673 F.Supp. at 1175–76; *Hall v. Bowen*, 672 F.Supp. 667, 670 (E.D.N.Y.1987); *Correa*, 587 F.Supp. at 1220–21. The Second Circuit has, however, adopted the catalyst test for determining whether a fee award was appropriate in the context of other fee-shifting statutes. *See Rose v. Heintz*, 806 F.2d 389, 391 (2d Cir. 1986) (42 U.S.C. § 1988—civil rights); *Gerena–Valentin v. Koch*, 739 F.2d at 758–59 (Voting Rights Act). In light of the Second Circuit's use of the catalyst test in determining fee awards under other statutes, and the view of courts that the EAJA should be read consistent with other federal fee-shifting statutes, *Langton v. Johnston*, 928 F.2d 1206, 1224 n. 21 (1st Cir. 1991); *Vitale*, 673 F.Supp. at 1175, the court finds that the use of the catalyst test is appropriate in this case.

To gain prevailing party status under this test, plaintiff "must show a causal connection between the relief obtained and the litigation in which fees are sought." *Gerena–Valentin*, 739 F.2d at 758. Plaintiff need not show that her suit was the sole cause of the expeditious review her case received from the Secretary. *Correa*, 587 F.Supp. at 1221. Rather, the necessary connection exists if plaintiff's lawsuit was "a catalytic, necessary, or substantial factor in obtaining relief." *Id.* at 758–59. The inquiry into causality is "an intensely factual and pragmatic one." *Campaign for a Progressive Bronx v. Black*, 631 F.Supp. 975, 980 (S.D.N.Y.1986) (quoting *Posada v. Lamb County, Texas*, 716 F.2d 1066, 1072 (5th Cir.1983)). In this regard, the chronological sequence of events is an important factor in determining whether or not defendants "guided their actions in response to the plaintiff's lawsuit." *Correa*, 587 F.Supp. at 1221.

On August 7, 1990, this court ordered defendant to submit evidence "as to whether and to what extent this lawsuit affected the timing or substance of the Appeals Council's final decision to award disability benefits to plaintiff." In response to this order, defendant submitted an affidavit of Dennis Plitt, an analyst with the Social Security Administration's Office of Hearings and Appeals, who was assigned to review plaintiff's claim. In that affidavit, Plitt stated that he prepared his recommendations regarding the disposition of plaintiff's claim on September 15, 1989. Plitt Aff. at ¶ 5. As of September 27, Plitt's recommendation apparently remained in the typing pool. *Id.* at ¶¶ 8, 10. On that day, an attorney from the Office of General Counsel of the Social Security Division instructed Plitt to expedite the case. *Id.* at ¶ 8. Although Plitt maintained that the time between his submission of his recommendation for typing and its completion was well within the normal range, he contacted the typing unit regarding the status of his recommendation, in response to the Office of General Counsel's inquiry. *Id.* at ¶ 10. Three working days later, on October 2, 1989, the Appeals Council issued its final decision. *Id.* at ¶ 12. While there is nothing in Plitt's account of the events leading up to the Appeals Council's ruling that amounts to a smoking gun, the sequence of events he describes strongly suggests that the Appeals Council expedited its decision in response to plaintiff's suit. This infer-

ence becomes stronger when coupled with the fact that while the first two reviews of plaintiff's claim by the Appeals Council took three and four months, this final review took just over two months.[1]

Defendant argues that this sequence of events does not support any inference that plaintiff's suit had a role in obtaining the relief she sought. But it is precisely because of defendants' reluctance to concede the effects of plaintiffs' actions that courts have held that "clues to the provocative effects of plaintiff's legal efforts are often best gleaned from the chronology of events: defendants, on the whole[,] are usually rather reluctant to concede that the litigation prompted them to mend their ways." *Black*, 631 F.Supp. at 980 (quoting *Posada*, 716 F.2d at 1072). Although the primary aim of plaintiff's suit was an award of interim benefits, it is clear from the record that plaintiff was driven to filing suit by delay on the part of the ALJ and repeated remands of the Appeals Council. It is reasonable to infer that plaintiff's suit was also brought for strategic reasons, namely, expediting a decision. The other relief sought by plaintiff, including the removal of ALJ Jacobs from the case, strengthens this inference. The court finds from the sequence of events in this case that plaintiff's suit was a catalytic factor in expediting a ruling from the Appeals Council, the "practical outcome" sought by plaintiff in bringing her suit, *American Constitutional Party v. Munro*, 650 F.2d 184, 188 (9th Cir.1981), thus rendering her claim for interim benefits moot. As a result, the court finds that plaintiff is a prevailing party within the meaning of the EAJA.

### B. *Substantial Justification*

■ Even if plaintiff is the prevailing party, the court may award attorney's fees under the EAJA only if the Secretary's position was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). "Position" refers to both the government's litigation

position and the underlying actions that spawned the litigation in the first place. *Id.* at § 2412(d)(2)(D); *Trichilo v. Secretary of Health and Human Services*, 823 F.2d 702, 708 (2d Cir.1987). Thus, in this case, the actions of the ALJ and the Appeals Council, as agents of the defendant, are relevant. The test for substantial justification is essentially one of reasonableness. *Environmental Defense Fund v. Watt*, 722 F.2d 1081, 1085 (2d Cir.1983). The Secretary bears the burden of proof on this issue, and must make a "strong showing" to meet this burden. *Id.; Vitale*, 673 F.Supp. at 1178. Plaintiff points to a number of instances, principally involving the actions of ALJ Jacobs, during the course of plaintiff's prosecution of her claim that highlight the lack of substantial justification for the Secretary's position. Of these, the court need discuss only two.

■ The so-called "treating physician rule," long the law in this Circuit, requires that the expert opinion of a claimant's treating physician regarding claimant's "medical disability" is binding on the factfinder, here ALJ Jacobs, "unless controverted by substantial evidence." *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir.1986). In this case, three treating physicians found plaintiff to be disabled. Buckel Decl. at ¶¶ 8–9. These opinions were available to the ALJ prior to his first decision denying plaintiff benefits. *Id.* at ¶ 14. Yet, it was not until the ALJ's second hearing decision, on remand from the Appeals Council, that the ALJ received any evidence that could have controverted the opinions of plaintiff's treating physicians. Buckel Decl., Exh.J. The ALJ did receive additional evidence that he found to controvert the treating physicians' reports when he considered the case after remand. *Id.* One remand and two hearing decisions later, the Appeals Council nonetheless ruled that plaintiff was entitled to benefits on the ground that the treating physician's opinion, *available prior to the ALJ's first hearing decision*, was not controverted by any other evidence of record. Pltf's. Mem.

**1.** There is no evidence that plaintiff's suit affected the *substance* of the Appeals Council's decision.

of Law, Appendix A, at 3. This ruling suggests that a proper application of the treating physician rule from the outset of the case would have obviated the need for the years of litigation that this case ultimately required. Defendant does not successfully rebut this claim. The court is also troubled by the inconsistencies between the ALJ's findings in his first two decisions regarding plaintiff's disability, and his finding in his third decision. Indeed, the Appeals Council acknowledged this problem and held that his third finding was "inconsistent with all the previous findings." *Id.* Based on the ALJ's continued disregard for the relevant rules of law, as illustrated in these two examples, the court finds that the Secretary's position, as a whole, was not reasonable, and that an award of attorney's fees pursuant to 28 U.S.C. § 2412(d)(1)(A) is justified.[2]

II. Fees Under Section 2412(b)

 Plaintiff also seeks to recover attorney's fees under 28 U.S.C. § 2412(b). This section codifies the common law exception to the so-called "American rule" that parties to the litigation pay their own attorney's fees regardless of the outcome of the lawsuit. *Wells v. Bowen,* 855 F.2d 37, 46 (2d Cir.1988). In order to recover fees under this section, plaintiff must be a prevailing party and show that the government has acted in bad faith. The government acts in bad faith for purposes of the EAJA when the government's position was 'entirely without color' and undertaken for reasons of harassment or delay or other improper purpose. *Wells,* 855 F.2d at 46. Recovery of attorney fees under this sec-

tion requires far more egregious conduct on the government's part than is required under § 2412(d). In addition, this section exposes the government to liability for costs and fees above and beyond the limit set in § 2412(d). *Id.* Plaintiff bases her request for fees under this section on the same conduct on which the court based its fee award under § 2412(d)(1)(A). Although the defendant's conduct taken as a whole was not reasonable, the court does not find that it rose to the level of bad faith, or that it was undertaken "vexatiously, wantonly, or for oppressive reasons." *Id.* (quoting *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975)). Therefore, plaintiff's motion for fees under § 2412(b) of the EAJA is denied.

The court finds plaintiff's fee request as set out in plaintiff's Affidavit of Services reasonable, and thus awards a total of $6,083.32, which represents compensation for 56.88 hours at the adjusted statutory rate of $106.95 per hour. *See* Aff. of Services, at ¶¶ 17–21.

### Conclusion

For the reasons set forth above, plaintiff's motion for attorney's fees pursuant to § 2412(d)(1)(A) of the EAJA is hereby granted, and the Secretary is directed to pay plaintiff's attorney the sum of $6,083.32 forthwith.

SO ORDERED.

---

**2.** Defendant also argues that because this court did not have jurisdiction over the underlying action brought by plaintiff because she did not exhaust her administrative remedies, its position was thus substantially justified, and the court must deny plaintiff's fee application. This argument neglects to point out, however, that the government conduct that a court must scrutinize for purposes of the substantial justification test encompasses both conduct of the litigation, and the actions that made the litigation necessary. *Trichilo,* 823 F.2d at 708. The government does not appear to argue that because this court did not have jurisdiction over the underlying action it has no jurisdiction to

hear this fee petition. Even if the government were to make this argument, however, the court finds that there exist several colorable bases for jurisdiction over this suit, including plaintiff's claim that requiring her to exhaust her remedies would be futile, *see City of New York v. Heckler,* 742 F.2d 729, 740 (2d Cir.1984), *aff'd sub nom., Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), and her invoking of mandamus jurisdiction under 28 U.S.C. § 1361, which the Second Circuit has held allows suits against the Secretary for failure to fulfill his duty to issue a timely decision in disability claims cases. *Dietsch v. Schweiker,* 700 F.2d 865, 868 (2d Cir.1983).