**Mary EDWARDS o/b/o Leslie EDWARDS, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 91 Civ. 1482(LBS).**

United States District Court, S.D. New York.

Jan. 6, 2003.

Irwin M. Portnoy, Irwin M. Portnoy and Associates, P.C., Newburgh, NY, for Plaintiff.

James B. Comey, United States Attorney for the Southern District of New York, By: Lorraine S. Novinski, Assistant United States Attorney, New York, NY, for Defendant.

### OPINION AND ORDER

SAND, District Judge.

This application for attorney's fees follows over a quarter century of efforts to obtain social security disability benefits on behalf of Leslie Edwards ("Edwards" or "Plaintiff"), a significant portion of which postdates the death of Mr. Edwards him-

self.[1]  Although Edwards did eventually obtain a portion of the benefits he sought, the Court denies the fee application.

## I.  Background

The Court refers those seeking greater familiarity with the factual and procedural history of Edwards's benefit applications to the Report and Recommendation of Magistrate Judge Pitman, adopted in part on August 8, 2002.  Nonetheless, because the Report and Recommendation was not published, and in view of the tortured history of this case (or, perhaps more appropriately, these cases), a summary of this history is set forth here.

Leslie Edwards applied for disability benefits on December 27, 1977, claiming that he had been disabled since December 31, 1976.  His claim was denied both initially and at the reconsideration stage, and he did not seek further review before an Administrative Law Judge ("ALJ").  Over ten years later, on December 12, 1988, Edwards filed a second benefit application on the basis of the same disability.  Again the claim was denied, and although Edwards pursued the decision at the ALJ and Appeals Council stages, he failed to win any benefits.  Sometime in early 1991, Edwards retained attorney Carol Goldstein to pursue his claim in this Court under 42 U.S.C. § 405(g).  Before the Social Security Administration ("SSA") answered the complaint, however, the parties jointly stipulated to a remand.[2]  In a "Stipulation and Order of Remand" signed by both parties and filed on June 4, 1991, this Court ordered:

It is hereby stipulated and agreed, by and between the attorneys for the defendant and the plaintiff, that this action be and hereby is remanded to the [SSA] pursuant to 42 U.S.C. § 405(g), for further administrative proceedings.

In an "Order of Discontinuance" filed the next day, the Court further ordered:

The Court having endorsed a stipulation by the parties remanding this matter to the [SSA], the case is hereby closed in this Court, without prejudice to reopening following completion of the administrative proceedings.  If such reopening is required, all filing fees are waived.

The Court did not specify any particular source of authority for its remand other than " § 405(g)."

Several critical and overlapping events followed.  First, on September 1, 1991, Edwards retained a new attorney, Irwin Portnoy.  Second, on remand the SSA again denied Edwards any benefits; the Appeals Council denied review on July 14, 1994.  Third, on January 2, 1993, Leslie Edwards died.  Fourth, on March 8, 1993, Edwards received a letter from the SSA informing him that he might be entitled to benefits as a member of the class covered by the settlement in *Stieberger v. Sullivan,* 801 F.Supp. 1079 (S.D.N.Y.1992) (Sand, J.), and Portnoy returned the attached notice requesting *Stieberger* review on Edwards's behalf.

Following the denial of benefits, Portnoy filed several motions in this Court, seeking, *inter alia,* to reopen the case, to

---

1.  For ease of reference, this Opinion refers to Plaintiff as "Edwards" and "he" even when discussing events which took place after Mary Edwards took her deceased husband's place in the litigation.

2.  On March 31, 1995, the SSA became an independent federal agency. By virtue of this change, legal actions formerly directed against the Secretary of Health and Human Services are now appropriately captioned against the Commissioner of the SSA. Because this litigation and the relevant caselaw span both eras, for reasons of clarity this Opinion refers only to the SSA.

amend the complaint to challenge the latest SSA decision, and to substitute as plaintiff Edwards's wife Mary. These motions were eventually granted without opposition on November 7, 1994. Having returned to this Court, the defendant SSA then moved to remand the case again, this time for the consideration of new evidence that Edwards had received substantial earnings in 1989, 1990, and 1991. On November 30, 1995, the Court granted the motion and remanded the case pursuant to sentence six of § 405(g).

Edwards's case resumed its unusual path through administrative adjudication as two subsequent ALJ determinations that he was not entitled to benefits were vacated by the Appeals Council (once in 1997 because the ALJ had not sufficiently considered certain evidence, and once in 1998 because the audiotape of the hearing was inaudible). Before a third scheduled hearing could take place, Edwards received notice on May 24, 1999, that his application for benefits had been reconsidered under *Stieberger*, and that he would receive benefits covering the period from December 1987 through January 1993. Because these benefits were the maximum allowable under the 1988 application (commencing one year before the filing of the application and terminating with Edwards's death), the SSA canceled the pending hearing and determined that no further review was necessary. Adopting in large part the Report and Recommendation of Magistrate Judge Pitman, this Court rejected Edwards's subsequent motion to reopen the case.[3] On June 11,

1999, Goldstein filed a fee application on her own behalf which the SSA settled for $1250. Portnoy filed the instant fee application on September 6, 2002.[4]

## II. The Equal Access to Justice Act

■ The Equal Access to Justice Act ("EAJA") provides in pertinent part that:

[A] court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ..., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

The EAJA was enacted in response to Congress's concern "that persons may be deterred from seeking review of, or defending against, unreasonable government action because of the expense involved in securing the vindication of their rights." *Sullivan v. Hudson*, 490 U.S. 877, 883, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989) (internal quotation marks omitted). The EAJA applies to actions brought under § 405(g) for judicial review of the denial of social security benefits by the SSA. *See id.* at 883–84, 109 S.Ct. 2248.

The dispute in this case centers not on whether the SSA's position was "substantially justified," but rather on the EAJA's requirement that the fee claimant be the "prevailing party." The question whether Edwards has prevailed within the meaning of the EAJA plunges the Court into a pair

---

**3.** Although Edwards sought leave to amend the complaint and assert rights as a member of the class in *Dixon v. Shalala*, 54 F.3d 1019 (2d Cir.1995), the Court denied this leave "without prejudice to the assertion by Plaintiff of claims before the [SSA] pursuant to *Dixon*."

**4.** The September 6 fee application is styled as on behalf of both Goldstein and Portnoy, but Goldstein's 1999 fee settlement was for "full satisfaction of any and all claims ... in connection with this action," and in any case the hours claimed in the instant petition appear to cover only work by Portnoy.

of jurisprudential thickets, each of which shall be explored in turn.

### III. Sentence Four and Sentence Six of § 405(g)

■ The parties first dispute whether the initial remand in this case was pursuant to sentence four or sentence six of § 405(g), a fact with significant implications for prevailing-party status. Generally speaking, a sentence four remand accompanies a judgment that terminates the district court's jurisdiction with a substantive ruling "affirming, modifying, or reversing" the SSA's decision. 42 U.S.C.

§ 405(g).[5] Today it is clear that by obtaining a sentence four remand a claimant immediately prevails whether or not he ultimately obtains benefits, and he may recover attorney's fees for the judicial proceeding in which he prevailed; any further SSA decisions must be challenged in a new and distinct lawsuit. *See Shalala v. Schaefer*, 509 U.S. 292, 299–302, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). By contrast, a sentence six remand may be ordered for good cause either on the motion of the SSA before answering the complaint, or where there is new material evidence. *See* 42 U.S.C. § 405(g). Upon a sentence six

---

**5.** 42 U.S.C. § 405(g) states in full, with sentence numbers added for convenience:

(1) Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. (2) Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the District Court of the United States for the District of Columbia. (3) As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. (4) The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. (5) The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) hereof which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) hereof, the court shall review only the question of conformity with such regulations and the validity of such regulations. (6) The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based. (7) Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. (8) The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. (9) Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.

remand the district court maintains jurisdiction over the subsequent administrative proceedings, placing the claimant in a higher-risk situation: if he ultimately obtains benefits, he is eligible for fees covering his attorney's work at both the district court and administrative level; if he does not ultimately obtain benefits, he never prevails and cannot recover any fees. Whatever the result of the post-remand proceedings, "a sentence-six remand works like a yo-yo; once the record has been enlarged, the district court finally decides whether the administrative decision is tenable." *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan,* 195 F.3d 975, 978 (7th Cir.1999). Perhaps most crucially, the Supreme Court has now made clear that sentence four and sentence six are the *only* valid sources of authority for district court remands in § 405(g) social security cases. *See generally Schaefer,* 509 U.S. at 299–300 & nn. 3–4, 113 S.Ct. 2625; *Raitport v. Callahan,* 183 F.3d 101, 103–104 (2d Cir.1999); *Medina v. Apfel,* 2001 WL 1488284, **3–4, 2001 U.S. Dist. LEXIS 19110, *10–*12 (S.D.N.Y. Nov. 21, 2001).

In the Spring of 1991, however, this legal landscape was far from fully formed and the Court entered its remand order without categorizing it under sentence four or sentence six. Because of the implications that stem from these labels, the Court is now asked to journey through a "time warp," [6] and deduce retrospectively whether its remand was pursuant to sentence four or sentence six–a task akin to determining whether Julius Caesar was a Republican or a Democrat. Although the Court ultimately finds that it is unnecessary to categorize its 1991 remand, the factors and caselaw involved bear on other

aspects of this case as well, and are thus worth reviewing in some depth.

Until 1991, the rule in this Circuit and elsewhere was that, "generally speaking, a social security claimant prevails when it is determined that she is entitled to benefits." *McGill v. Sec'y of Health & Human Servs.,* 712 F.2d 28, 31–32 (2d Cir.1983) (citations omitted). A version of this rule was announced by the Supreme Court in 1989 in *Sullivan v. Hudson:*

> [W]here a court's remand to the [SSA] for further administrative proceedings does not necessarily dictate the receipt of benefits, the claimant will not normally attain 'prevailing party' status within the meaning of § 2412(d)(1)(A) until after the result of the administrative proceedings is known. 490 U.S. at 886, 109 S.Ct. 2248.

Under *Hudson,* the critical question was the relationship between the court proceedings and the remand proceedings. Where the court affirmed an SSA benefits denial, obviously the claimant did not prevail. Where the court directed the payment of benefits (with or without a remand), the claimant prevailed and could recoup fees for the court proceedings. Where the court issued a more open-ended remand, however, the claimant faced two possibilities: On one hand, the claimant might be denied benefits again, and therefore not prevail. On the other hand, he might ultimately be awarded benefits, in which case he could recoup fees covering both court and administrative proceedings. *Id.* at 889–90, 109 S.Ct. 2248. This scheme was based on the idea that "the judicial review provisions of the Social Security Act contemplate an ongoing civil action of which the remand proceedings are but a part." *Id.* at 890, 109 S.Ct. 2248.

---

**6.** *Cf. George v. Shalala,* 1994 WL 55609, *3, 1994 U.S.App. LEXIS 3131, *9 (10th Cir. Feb. 23, 1994) (unpublished opinion) (discussing a similar "time warp" created by the Supreme Court's § 405(g) jurisprudence).

The *Hudson* regime was a brief one. In 1990, the Court complicated matters by interpreting § 405(g) to differentiate between sentence four and sentence six. In *Sullivan v. Finkelstein*, 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990), the Court held that, as related above, sentence four remands are final judgments terminating the litigation by substantively "affirming, modifying, or reversing," *id.* at 625, 110 S.Ct. 2658, whereas sentence six "plainly describes an entirely different kind of remand," appropriate upon the discovery of new material evidence, *id.* at 626, 110 S.Ct. 2658.[7] The next year, in *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), the Court specified that sentence four and sentence six were the *exclusive* sources of remand authority available to the district court under § 405(g). "While normally courts have inherent power, among other things, to remand cases, both the structure of § 405(g), as amended, and the accompanying legislative history show Congress' clear intent to limit courts to two kinds of remands in these cases." *Id.* at 101, 111 S.Ct. 2157. Moreover, the Court linked this terminology to the EAJA, holding that because a sentence four remand accompanied a "final judgment," it also triggered the thirty-day filing period for fee applications under 28 U.S.C. § 2412(d)(1)(B). In a sentence six remand, by contrast, because the district court maintained jurisdiction throughout the subsequent administrative proceedings, final judgment was not entered (and the EAJA filing period did not begin) until after the case returned to court. *Id.* at 102, 111 S.Ct. 2157. Finally, noting that the remand in the case before it did not appear to be either a sentence four or a sentence six remand, the Court suggested that it might instead be a voluntary dismissal under Fed. R.Civ.P. 41(a), in which case the claimant should not be considered a prevailing party at all. *Id.* at 102–3, 111 S.Ct. 2157.

A fair amount of confusion understandably ensued among courts and litigants faced with pre-*Melkonyan* remands (such as the one faced by this Court) not clearly ascribable to either sentence four or sentence six. Additionally, the decisions seemed to dictate that a claimant who obtained a sentence four remand was required to file his fee application within thirty days of that "final judgment," even though pursuant to *Hudson* he would not "prevail" unless and until he won benefits on remand. If, however, he waited until he prevailed, the fee application would be untimely under the EAJA.

In 1993, the Supreme Court resolved much of this confusion by deciding *Shalala v. Schaefer*. *Schaefer* reaffirmed that sentence four and sentence six were the exhaustive set of remands, but established that claimants prevail immediately after a sentence four judgment, irrespective of whether they eventually obtain benefits on remand. 509 U.S. at 300–302, 113 S.Ct. 2625. Simultaneously, the Court limited to sentence six remands *Hudson's* holding that fees were available for post-remand administrative proceedings. *Id.* at 300 n. 4, 113 S.Ct. 2625. Finally, mindful of the numerous cases in which claimants had unknowingly prevailed after long-ago sentence four remands, the Court held that where the district court had (incorrectly, in retrospect) failed to enter final judgment, the thirty-day EAJA filing period would not run until judgment was actually entered. *Id.* at 302–303, 113 S.Ct. 2625.

---

7. Although the *Finkelstein* Court did not specifically mention the availability of a sentence six remand upon motion of the SSA before answering the complaint, a subsequent decision did. *See Schaefer,* 509 U.S. at 297 n. 2, 113 S.Ct. 2625.

It is therefore noteworthy that many of the cases upon which any categorization of this Court's 1991 remand would have to rely were decided in response to the uncertainty and the potential for perverse results engendered by the pre-*Schaefer* time warp. Many of these cases derive and apply a formalistic taxonomy of remands: some reason that because a remand was clearly not pursuant to sentence six it must have been pursuant to sentence four; others reason that because a remand was clearly not pursuant to sentence four it must have been pursuant to sentence six.[8] Still other cases derive a similar taxonomy and then engage in various jurisprudential acrobatics to avoid it.[9] As shall be seen below, applying the principals that derive from these cases in a retrospective attempt to categorize the 1991 remand is unlikely to lead to a satisfactory result.

## IV. The 1991 Remand

The 1991 remand in this case bears few of the hallmarks of a sentence four remand. First, it did not accompany a final judgment. Although the Supreme Court has remarked that "[i]mmediate entry of judgment ... is in fact the principal feature that distinguishes a sentence-four remand from a sentence-six remand," *Schaefer*, 509 U.S. at 297, 113 S.Ct. 2625, in practice courts have rarely treated the absence of final judgment as dispositive. *See, e.g., id.* at 296–97, 302, 113 S.Ct. 2625 (identifying the remand before it as pursuant to sentence four despite the non-entry of judgment); *id.* at 299, 113 S.Ct. 2625 (characterizing the remand in *Hudson,* which did not accompany a judgment, as a sentence-four remand); *Flores v. Shalala,* 49 F.3d 562, 569 (9th Cir.1995) (identifying a remand as pursuant to sentence four despite the non-entry of judgment); *Flanders v. Shalala,* 1994 WL 329482, \*\*2–3, 1994 U.S. Dist. LEXIS 9189, \*7 (N.D.N.Y. July 1, 1994) (same); *DiBenedetto v. Sec'y of the Dep't of Health & Human Servs.,* 1993 WL 41762, \*\*3–4, 1993 U.S. Dist. LEXIS 1987, \*8–\*9 (E.D.N.Y. Feb. 12, 1993) (same); *Sorich v. Shalala,* 838 F.Supp. 1354, 1358 (D.Neb.1993) (same); *Sparling v. Sullivan,* 785 F.Supp. 312, 315 (N.D.N.Y.1992) (same); *cf. Wilsey v. Sec'y of Health & Human Servs.,* 1995 WL 274499, \*\*1–2, 1995 U.S. Dist. LEXIS 6313, \*4 (N.D.N.Y. May 2, 1995) (identifying a remand as pursuant to sentence six despite the fact that judgment was entered).

---

**8.** *Compare, e.g., Sparling v. Sullivan,* 785 F.Supp. 312, 315 (N.D.N.Y.1992) (determined to be sentence four), *with, e.g., Alayon v. Sec'y of the Dep't of Health & Human Servs.,* 1993 U.S. Dist. LEXIS 21391, \*3–\*4 (E.D.N.Y. Apr. 30, 1993) (determined to be sentence six). More recent cases have even fashioned a "dual basis" remand pursuant to *both* sentence four and sentence six. *See, e.g., Jackson v. Chater,* 99 F.3d 1086, 1094–97 (11th Cir. 1996); *Joe v. Apfel,* 1998 WL 683771, \*\*3–4, 1998 U.S. Dist. LEXIS 15463, \*10–\*12 (W.D.N.Y. July 10, 1998).

**9.** For example, some courts held applications in abeyance pending administrative proceedings. *See, e.g., Maldonado v. Sullivan,* 91–CV–6412T, at 10 (W.D.N.Y. Jan. 27, 1993); *Anderson v. Sullivan,* 807 F.Supp. 17, 20 (N.D.N.Y. Sept.10, 1992). A number of courts divined a subspecies of sentence four remand which permitted the district court to retain jurisdiction of subsequent administrative proceedings. *See, e.g., DiBenedetto v. Sec'y of the Dep't of Health & Human Servs.,* 1993 WL 41762, \*5, 1993 U.S. Dist. LEXIS 1987, \*14 (E.D.N.Y. Feb. 12, 1993); *Sparling,* 785 F.Supp. at 317. Other courts categorized various borderline remands under sentence six where they might have fit more easily under sentence four. *See, e.g., Long v. Shalala,* 1993 WL 393782, \*3, 1993 U.S. Dist. LEXIS 14151, \*13 (D.Kan. Sept. 28, 1993) (categorizing a remand as a pre-answer sentence six remand even though the SSA had filed an answer).

Additionally, the 1991 remand did not explicitly affirm, modify, or reverse the SSA's determination, but merely remanded "for further administrative proceedings." Again, courts have frequently looked past this omission in characterizing a remand as pursuant to sentence four. *See, e.g., Pimentel v. Sec'y of Health & Human Servs.*, 1994 WL 259812, *1 (S.D.N.Y. June 8, 1994) (remanding without substantive ruling so that the claimant could be considered as a member of a class action); *Maldonado v. Sullivan*, 91–CV–6412T, at 9 (W.D.N.Y. Jan. 27, 1993) (same); *Flanders*, 1994 WL 329482, *1, 1994 U.S. Dist. LEXIS 9189, at *4 (stipulated remand "for further administrative proceedings"); *Kaleel v. Shalala*, 832 F.Supp. 738, 739 (S.D.N.Y.1993) (designating a voluntary dismissal as a sentence four remand because the claimant "obtained precisely what his complaint sought–a hearing on his benefits claim"); *Sorich*, 838 F.Supp. at 1358 (finding a voluntary remand on the SSA's motion to be pursuant to sentence four because "for all practical purposes ... it forced the [SSA] to review the denial of benefits again"); *Sparling*, 785 F.Supp. at 313 (remand "for further proceedings"); *Anderson v. Sullivan*, 807 F.Supp. 17, 18–20 (N.D.N.Y. Sept.10, 1992) (designating a remand "for further administrative proceedings" as pursuant to sentence four in part because the parties stipulated that it should be so designated).

As much as the 1991 remand does not bear the hallmarks of sentence four, it is similarly free of the hallmarks of sentence six. Initially, there is no suggestion by either party that the remand was ordered on the basis of newly presented evidence, seemingly foreclosing the possibility of that subspecies of sentence six remand. *But see Searcy v. Comm'r of Soc. Sec.*, 103 F.Supp.2d 120, 125–25 & n. 6 (N.D.N.Y. 2000) (considering a legal development to be new evidence for the purpose of sentence six) (adopting magistrate's recommendation). If the remand was pursuant to sentence six, then, it must have been the type of sentence six remand made on motion of the SSA before answering the complaint. But even granting that the 1991 remand predated any answer to the complaint, both types of sentence six remand require a finding of good cause, which was clearly not made in this case. Of course it would be superfluous to point out that this defect has not been uniformly fatal to sentence six status. *See, e.g., Mijares v. Sec'y of Health & Human Servs.*, 887 F.Supp. 57, 59 (E.D.N.Y.1994) (remanding pursuant to sentence six without mentioning good cause); *Longey v. Sullivan*, 812 F.Supp. 453, 456 (D.Vt.1993) ("Although the remand order at issue here does not specify a finding of good cause ..., [it] conforms more closely to the sentence six mold than to that of a sentence four remand.").

Finally, the remand was clearly not conceived of as a "yo-yo." Although no final judgment was entered pursuant to Fed. R.Civ.P. 58, the Court did discontinue and close the case "without prejudice to reopening following completion of the administrative proceedings." As noted above, when a district court remands pursuant to sentence six, § 405(g) requires that the SSA "shall," after reconsidering its decision, return to the court for final judgment. By contrast, this Court added to the end of its remand order the words "*If* such reopening is required, all filing fees are waived" (emphasis added).

If the 1991 remand fits easily under neither sentence four nor sentence six, there remains only the third option suggested by the Supreme Court in *Melkonyan:* that the so-called remand was in actuality a voluntary dismissal under Fed.

R.Civ.P. 41(a).[10] The remand in this case is verbally reminiscent of that in *Melkonyan*. *See* 501 U.S. at 92, 111 S.Ct. 2157 (" 'Defendant's motion to remand, concurred in by plaintiff, is granted. The matter is remanded to the Secretary for all further proceedings.' "). Rule 41(a) may in fact be an even stronger possibility in this case, where the parties actually signed a stipulation (as required by the Rule), than in *Melkonyan* itself, where they did not. *Id.* at 102, 111 S.Ct. 2157. Despite some initial steps down this doctrinal path, however, courts have largely avoided construing remands as dismissals, likely because this construction carries with it the harsh consequence of denying prevailing-party status whether or not the claimant subsequently wins benefits. *See, e.g., Kaleel*, 832 F.Supp. at 739 (construing a so-ordered voluntary dismissal as a sentence-four remand and thereby granting the claimant prevailing party status); *Sorich*, 838 F.Supp. at 1358 (determining that a consensual remand could not have been a voluntary dismissal because it was not labeled a dismissal).[11] Notably, the Second Circuit's most recent in-depth treatment of § 405(g) remands does not even discuss the voluntary dismissal option. *See Raitport*, 183 F.3d at 105.

In the end, the Court finds that it need not decide into which round hole it should pound its square remand.[12] The instant fee petition can only succeed if Edwards eventually "prevailed" within the meaning of the EAJA when he was finally awarded benefits in 1999. If on one hand the 1991 remand was pursuant to sentence four, then Edwards prevailed in his first foray into district court, a foray for which his first lawyer, Carol Goldstein, has already settled her claim. The second foray into district court ended in 1995 with a sentence six remand, with the result that under *Hudson* fees for that work and any intervening administrative representation are recoverable only if Edwards prevailed in 1999. If on the other hand the 1991 remand was also pursuant to sentence six, then the recoverability of fees for all of the courtroom and administrative representation from 1991 until today hinges on whether Edwards prevailed in 1999.

## V. Prevailing–Party Status

■ As related above, while his latest ALJ hearing was pending in May 1999 Edwards received notice that he had been awarded benefits based on the *Stieberger* review commenced in 1993. Because these benefits represented the maximum allowable under his 1988 application, the SSA and this Court determined that there was no longer any justiciable controversy and "terminate[d] this litigation." On this basis, Edwards argues that he prevailed because he eventually received the benefits for which he applied in the 1988 application–that is, the application under review in this Court. The SSA counters that because the benefit award was pursuant to the *Stieberger* review, parallel to but dis-

10. Rule 41(a) provides in pertinent part that "an action may be dismissed by the plaintiff without order of court . . . (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action." Fed. R.Civ.P. 41(a).

11. Courts have been more likely to find dismissals where the remand originates via stipulation at the *appellate* level. *See, e.g., Richard v. Sullivan*, 955 F.2d 354, 356 (5th Cir. 1992) (finding that the claimant did not pre-

vail after a "joint stipulation voluntarily dismissing the appeal pursuant to Fed. R.App. P. 42 and [remanding] for further administrative proceedings"); *Timmons v. Sullivan*, 1992 WL 168228, **3–4, 1992 U.S. Dist. LEXIS 9289, *8–*9 (S.D.N.Y. June 26, 1992) (same).

12. *Cf. George*, 1994 WL 55609, *2, 1994 U.S.App. LEXIS 3131, at *5 (employing similar terminology).

tinct from the judicial review and remand in this case, Edwards never "prevailed" within the meaning of the EAJA.

■ A social security benefits claimant prevails if he "succeed[s] on any significant issue in litigation which achieved some of the benefit ... sought in bringing suit." *Schaefer,* 509 U.S. at 302, 113 S.Ct. 2625 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791–92, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)) (internal quotation marks omitted). A sentence four remand is one type of success because it "terminates the litigation with victory for the plaintiff." *Id.* at 301, 113 S.Ct. 2625. Another type of success is the eventual receipt of benefits after a sentence six remand. *Id.* at 300 n. 4, 113 S.Ct. 2625. By contrast, a plaintiff does not succeed "by virtue of having obtained a favorable procedural ruling ... during the course of the judicial proceedings." *Id.* at 301, 113 S.Ct. 2625 (citing *Hanrahan v. Hampton,* 446 U.S. 754, 758–59, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980)).

It is undisputed that Edwards's success in 1999 was not traceable to any substantive ruling in the course of litigation before this Court or on any remand ordered by this Court. The review central to this litigation was terminated as moot. The only favorable substantive ruling achieved by Edwards was pursuant to the parallel review process under *Stieberger.* If Edwards is to be considered a prevailing party, then, it will have to be under a different theory.

In his original brief in support of this fee application Edwards cites cases which invoke the so-called catalyst theory. Under the catalyst theory, courts have considered a claimant a prevailing party for purposes of the EAJA and other fee-shifting statutes if his lawsuit was a "catalytic, necessary, or substantial factor in attaining the relief." *Marbley v. Bane,* 57 F.3d 224, 234 (2d Cir.1995) (quoting *Koster v. Perales,* 903 F.2d 131, 135 (2d Cir.1990)) (internal quotation marks omitted). On this view a plaintiff prevails even if "at the end of the rainbow lies not a judgment," but rather a decision by the defendant "under pressure of the lawsuit, [to] alter[ ] his conduct (or threatened conduct) towards the plaintiff that was the basis for the suit." *Id.* at 234 (quoting *Hewitt v. Helms,* 482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987)) (internal quotation marks omitted). The catalyst theory, adopted at one point by nearly every circuit court of appeals, *see Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 601–602 & n. 3, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), was typically employed where the government defendant elected to settle a case or to repeal challenged legislation rather than await a court judgment.

Just last · year, however, the Supreme Court in *Buckhannon* rejected the catalyst theory as a basis for prevailing party status under the current wording of the relevant statutes: [13]

> The question presented here is whether [the term 'prevailing party'] includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. We hold that it does not.
>
> *Id.* at 606 (finding that plaintiff did not prevail even though the rule he challenged was repealed).

---

**13.** In any event, Edwards's case is hardly on all fours with catalyst theory in the first place. There is no indication that the SSA's *Stieber-* ger determination was a voluntary decision made under "pressure of the lawsuit" in this case.

Although the Court did not specifically address the EAJA, it did note that "Congress ... has authorized the award of attorney's fees to the 'prevailing party' in numerous statutes in addition to those at issue here," and that "[w]e have interpreted these fee-shifting provisions consistently." *Id.* at 602–603 & n. 4, 121 S.Ct. 1835. Indeed, the Second Circuit has since applied *Buckhannon's* holding to the fee-shifting provisions of 42 U.S.C. § 1988, *see N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Comm'n,* 272 F.3d 154, 158 (2d Cir.2001), and the Individuals with Disabilities Education Act, *see J.C. v. Reg'l Sch. Dist. 10,* 278 F.3d 119, 123 (2d Cir.2002). District courts within this Circuit have expressly applied *Buckhannon* to the EAJA, *see, e.g., Abiodun v. McElroy,* 2002 U.S. Dist. LEXIS 3519, *2 (S.D.N.Y. Mar. 4, 2002), as have other circuits, *see, e.g., Brickwood Contractors v. United States,* 288 F.3d 1371, 1378 (Fed.Cir.2002); *Perez–Arellano v. Smith,* 279 F.3d 791, 794 (9th Cir.2002).

Essentially conceding the inapplicability of catalyst theory, Edwards points to *Green v. Bowen,* 877 F.2d 204 (2d Cir. 1989), apparently for the proposition that a claimant prevails in social security litigation whenever he receives benefits based on the application in dispute, even if there is no causal link between the litigation and the benefit award. This theory is of course distinct from catalyst theory, which insists that "there must be a causal connection." *Marbley,* 57 F.3d at 234. Because the Court is not aware of any recent case that explicitly discusses such a theory, and because the Court is aware of the broad purposes of the EAJA, the *Green* case bears further examination.

The claimant in *Green,* having been denied benefits by the SSA, filed in district court for a writ of mandamus to compel the SSA to reconsider its decision. Although the SSA had earlier refused to reconsider on the ground that the reconsideration request had been untimely filed, after the filing of the mandamus action the SSA located paperwork which suggested that the request had been timely after all. The SSA then reopened the claim, and the parties stipulated a dismissal of the mandamus action. Green was ultimately awarded benefits. *Green,* 877 F.2d at 205–206. The Court of Appeals, deciding Green's subsequent fee petition, determined that he had prevailed because "the SSA determined that Green was entitled to the SSA benefits that he sought and awarded him those benefits." *Id.* at 206 (citing *McGill,* 712 F.2d at 31–32). The court continued, "We find nothing in the EAJA that requires that a party prevail in a civil action reviewing a final agency determination." *Id.*

*Green,* of course, was decided in 1989 and must be viewed through the cloudy prism of social security jurisprudence which followed. Through this prism, it appears to this Court that *Green* can be viewed in either of two ways: First, although the court never specified any causal relationship between the mandamus action and the SSA's reconsideration, *Green* may have been decided under an implicit catalyst theory. In this case *Buckhannon* precludes reliance thereon. Alternatively, *Green* may be interpreted in the way Edwards suggests, as resting more literally on the statement in *McGill* that "regardless of the ... actual relief sought in the district court, generally speaking, a social security claimant prevails when it is determined that [ ]he is entitled to benefits." *Id.* (quoting *McGill,* 712 F.2d at 31–32) (internal quotation marks omitted) (alteration in original).[14]

14. In support of this interpretation, Edwards cites a Southern District case which distin-

If this latter interpretation is correct, it bears repeating that the *McGill* regime has been wholly revamped by the four intervening Supreme Court decisions discussed in Part III above.[15] Notably, *McGill's* statement that a claimant prevails upon receiving benefits was never adopted in the same expansive terms by the Supreme Court: whereas *McGill* suggested that a claimant prevails when he obtains benefits, *Hudson* stated only that a claimant does *not* prevail *until* he obtains benefits. *Compare Green*, 877 F.2d at 206, *with Hudson*, 490 U.S. at 886–87, 109 S.Ct. 2248. Moreover, even this equivocal statement was cabined by the Supreme Court to the "narrow class" of remands in which a claimant wins benefits in administrative proceedings directed by the district court and over which the district court retains jurisdiction. *Schaefer*, 509 U.S. at 299–300, 113 S.Ct. 2625 (citing *Melkonyan*, 501 U.S. at 97, 111 S.Ct. 2157). Thus if the *McGill* regime ever permitted a claimant to attain prevailing party status in the absence of a causal relationship between his lawsuit and the benefits obtained, this feature did not survive *Melkonyan* and *Schaefer*. What the Supreme Court had in mind was clearly that a claimant would prevail if he succeeded after, and *because of,* a sentence six remand. Here there is

no suggestion that the *Stieberger* review in which Edwards obtained his benefits was directed by, or under the jurisdiction of, this Court in this litigation.[16]

Nor can Edwards avoid this fact by taking refuge in the literal terms of *Buckhannon* that a claimant prevails upon a "material alteration of the legal relationship of the parties." 532 U.S. at 604, 121 S.Ct. 1835. It is plain that such a "material alteration" causes a party to prevail only in the litigation which itself materially alters the relationship, not in all litigation which invokes or relates to that relief. Under *Hudson*, success at the administrative level on a sentence six remand becomes success in the case as a whole because "the remand proceedings are but a part" of the "ongoing civil action." *Id.* at 890, 109 S.Ct. 2248. Edwards cannot claim here that the *Stieberger* proceedings were similarly "a part" of his civil action. *Cf. Mercado v. Shalala*, 1996 WL 18993, *1, 1996 U.S. Dist. LEXIS 431, *4 (S.D.N.Y. Jan. 17, 1996) (denying prevailing party status to a claimant whose lawsuit "did not play any role" in the SSA's decision to award benefits, because that decision was reached the day before the complaint was served).[17]

---

guished *Green* from the catalysis line of cases and labeled it a "merits" case. *Garcia v. Sullivan*, 781 F.Supp. 969, 971 (S.D.N.Y. 1991). Because *Garcia* relied both on catalytic and merit-based success, this categorization of *Green* was not essential to its holding. *Id.* In any event, to the extent that *Garcia* itself relied on the same language from *McGill*, it offers no additional support to Edwards.

**15.** It is also worth noting that the central factual holding of *Green* was fatally undermined by *Melkonyan's* observation that a claimant does not prevail after a voluntary dismissal of his lawsuit. *See Melkonyan*, 501 U.S. at 102–103, 111 S.Ct. 2157

**16.** Another of the unique features of this case is that the litigation of the *Stieberger* action and settlement was itself conducted before this Court. Edwards, however, was not a named plaintiff in that litigation, and his 1991 lawsuit was a distinct matter.

**17.** The cases cited by Edwards are not to the contrary. In *Maldonado*, 91–CV–6412T, at 10, and *Pimentel*, 1994 WL 259812, at *1, the claimants "prevailed" because their lawsuits terminated with remands *directing* administrative review pursuant to a class action. These cases are readily distinguishable from parallel review pursuant to a class action but independent of the lawsuit in question.

The Court is aware that the result of its ruling in this application is that Edwards will not receive a fee award covering the bulk of his litigation·expenses despite having had held an apparently meritorious claim.[18] However this eventuality comes as a result of legal strategy: Edwards could at any point have moved to dismiss his court action and trust entirely to the *Stieberger* review, or could have declined the *Stieberger* review in 1993 and trusted entirely to this action. Having decided in effect to run two horses in one race he increased his chances of winning—but cannot now claim that both were victorious.

## V. Conclusion

For the reasons discussed·above, Plaintiff's fee application is hereby DENIED. SO ORDERED.

---

**18.** The SSA notes in its brief that the *Stieberger* award did set aside a statutory percentage for attorney's fees. Edwards does not dispute this fact, and in any case such a set-aside is not at issue here.